264 F.2d 663
 Nicholas GALLIS, as Guardian-ad-Litem of Elaine Gallis, an infant under the age of fourteen years, Nicholas Gallis, Cecile Gallis and Felicia Marchione, Plaintiffs-Appellees,
v.
PEELLE COMPANY, Defendant-Appellant.
 No. 161.
 Docket 25281.
 United States Court of Appeals Second Circuit.
 Argued January 20 and 21, 1959.
 Decided March 12, 1959.
 
 William H. Timbers, Skadden, Arps, Slate & Timbers, New York City (William S. O'Connor, New York, and Barry H. Garfinkel, Skadden, Arps, Slate & Timbers, New York City, on the brief), for defendant-appellant.
 Samuel M. Sprafkin, New York City (Rosoff & Rosoff, New York City, on the brief), for plaintiffs-appellees.
 Before HAND and WATERMAN, Circuit Judges, and BYERS, District Judge.
 HAND, Circuit Judge.
 
 
 1
 This appeal is from a judgment for the plaintiffs of the District Court for the Southern District of New York, Bicks, J., presiding, in an action to recover damages for personal injuries suffered upon an "escalator" installed, and "supervised," by the defendant in the Bus Terminal of the Port of New York Authority in the Borough of Manhattan. The plaintiffs were going to New York from their home in New Jersey, and after leaving their bus at the terminal stepped upon a descending "escalator." Accompanying the plaintiff, Nicholas Gallis, were his wife, Cecile, his mother-in-law, Felicia Marchione, and his daughter, Elaine. After the "escalator" had moved about halfway down Nicholas Gallis testified that "it came to a sudden stop, gave a forward jerk and a backward jerk * * * and then started to descend rapidly." Cecile Gallis spoke of the movement as a "terrific jerk," and Felicia Marchione as a "shaking." All were thrown off their feet, and somewhat injured — Elaine, whom her father was leading by the hand, seriously.
 
 
 2
 The plaintiffs offered no evidence that the "escalator" was out of order except the movements we have described, and rested their case upon the doctrine of res ipsa loquitur: i. e. that the accident was as such prima facie proof that the defendant had been negligent in installing or supervising, the "escalator." Their claim against the defendant rested on a contract between it and the Port of New York Authority, by which it had agreed "to use all reasonable care to keep the motorstairs in repair * * * and all repairs or replacements of parts made necessary by wear and tear of normal operation will be made by us." The defendant put in expert testimony to show that the "escalator" could not stop and start again, or "jerk" forwards and backwards; but the judge decided that the plaintiffs had made out a case for the jury. He held that in order to recover they must in the end prove that "the stopping and jerking * * * resulted from the negligence of the defendant. * * * [T]he mere fact that an accident happens is not proof that somebody was negligent"; they had the burden of proof on that issue. On the other hand, he told the jury that, if no employee of the Port Authority "contributed in any wise to the stopping and jerking, * * * the circumstances of this case would permit an inference of negligence on the part of the defendant."
 
 
 3
 This being an action depending upon diversity of citizenship, the law of New York controls, but upon this appeal we shall express no opinion as to whether, if the plaintiffs' testimony were accepted by the jury, it would have been justified in finding a verdict for the plaintiffs. This we may, and do, refuse to do because of the exclusion of evidence offered by the defendant. The plaintiff, Nicholas, had been by far the most articulate of the plaintiffs' witnesses as to the accident; and the defendant had cross-examined him at length. The plaintiffs had concluded their evidence and rested their case, and the defendant had moved for a dismissal which the court denied. Thereupon the defendant recalled Nicholas to the stand and asked him to identify his signature to a document in the possession of the Port Authority, which contained a claim made by him against the Authority on behalf of his daughter, Elaine, which he did. As a "full and complete description of accident" the claim read as follows: "While descending revolving escalator, the speed of the same was so rapid as to cause this claimant to fall and to tumble down all of the steps of the escalator." The fault of the Port Authority it then stated was "that this accident was definitely caused by the fault of the Port of New York Authority in that * * * the speed of the steps was entirely too great for the safety of any persons on them." Again, "I know positively it was the rapidity of the motion which caused all of the people on the escalators to lose their balance and be thrown about." The judge refused to allow the defendant to introduce this document in evidence on the ground that the Federal Rules of Civil Procedure, in particular Rule 43(b), 28 U.S.C.A. "do not authorize and were never intended to permit the use to be made of them that is sought to be made here."
 
 
 4
 We do not agree. The evidence would patently have been admissible before the plaintiffs rested their case, not only to impeach the testimony of Nicholas Gallis, but as an admission against his own personal claim as a party. (Whether it would have also been affirmatively admissible against him, as guardian ad litem of Elaine, we need not say.) It was extremely important, as a deliberate detailed statement of what had happened, and it was at complete variance with the version that the jury accepted. The defendant declared that it had not known of the statement while Nicholas was on the stand, but that issue we deem to have been irrelevant. No harm had been done by the delay, and the defendant should not have been charged with such a vital forfeiture for so inconsequential an omission. As we said in Sternberg Dredging Co. v. Moran Towing & Transp. Co., 2 Cir., 196 F.2d 1002, 1004: "It is of course true that, if evidence is introduced so late that any reply to it will require an undue prolongation of the trial, the judge had discretion to refuse it," but that was not the case here. The fact that the defendant put Nicholas Gallis on the stand as its own witness is no longer important. Rule 43(b) is peremptory that a "party may call an adverse party * * * and contradict and impeach him in all respects as if he had been called by the adverse party." Even though recalling Nicholas Gallis by the defendant should be deemed "making him" the defendant's "own witness," the defendant was free to contradict him. The limit of the examination is always a question of discretion, and in the case at bar we cannot accept the rejection of the document as being within the discretion of the trial court.
 
 
 5
 Judgment reversed; cause remanded for a new trial.