Joseph PATRICK, Plaintiff–Appellee,

v.

The CITY OF DETROIT; Ronald Gibson; Jeffrey Rees; Kevin Johnson; John Wiktor; Beryl Mandeville; Willie Harris; Keith Wilkerson; Cynthia Cheatom; and Betty Roland, Defendants,

and

Anselm Foster and Walter Clement, Defendants–Appellants.

Nos. 89–1019, 89–1637.

United States Court of Appeals, Sixth Circuit.

Argued March 6, 1990.

Decided June 28, 1990.

Maury Klein (argued), Southfield, Mich., for plaintiff-appellee.

Kevin F. Robbins, City of Detroit Law Dept., Detroit, Mich., Kenneth L. Lewis (argued), Detroit, Mich., for defendants-appellants.

Before MARTIN and BOGGS, Circuit Judges, and BROWN, Senior Circuit Judge.

BAILEY BROWN, Senior Circuit Judge.

Walter Clement and Anselm Foster, Detroit police officers, appeal a jury verdict in favor of plaintiff-appellee Joseph Patrick in this action brought pursuant to 42 U.S.C. § 1983,[1] in which Patrick alleged that police officers had used excessive force while taking him into custody following a high-speed chase of an automobile in which Patrick was a passenger.[2] The jury found

---

1. Patrick also brought pendent state law claims against the defendants for violation of his right to be free from unreasonable searches and seizures, as guaranteed by the Michigan Constitution, and for violation of Mich.Comp.Laws § 37.2102. The district court dismissed the statutory claim before the trial commenced, and it dismissed the state constitutional claim when it ruled on the defendants' motions for a directed verdict.

2. We note that No. 89–1019 is an appeal of the determination on the merits and No. 89–1637 is

Clement and Foster jointly and severally liable and awarded Patrick $300,000 in compensatory damages.[3] The officers make the following claims of error on appeal: (1) that the district court's erroneous refusal to permit Clement's attorney to cross-examine Patrick concerning the extent of his injuries during Clement's presentation of his proof adversely affected both Clement and Foster; (2) that this refusal also violated Clement's sixth amendment right to confrontation; and (3) that the district court demonstrated bias against Clement to the extent that both defendants were denied a fair trial.

■ After thoroughly reviewing the record, we cannot agree that the district court's conduct constituted bias that warrants reversal.[4] Moreover, these defendants have presented no authority, and we know of none, for extending a criminal defendant's sixth amendment right to confrontation to a civil litigant. We do hold, however, that the district court erred by refusing to allow Clement's attorney to question Patrick concerning the extent of his injuries during Clement's presentation of his proof. This refusal resulted in the jury's not receiving evidence that might have affected its calculation of the total amount of compensatory damages to be awarded. Accordingly, for the reasons that follow, we affirm the verdict of joint and several liability against Clement and Foster; however, we reverse and remand

for a new trial limited solely to determining the amount of compensatory damages for which Clement and Foster are to be held jointly and severally liable.

## I.

Patrick was a passenger in a vehicle that Detroit police chased at high speed after its driver ran a red light. Although the parties disagreed at trial over the route that the chase had taken, it is clear that three police cars chased the suspect car several miles and that the car made evasive maneuvers during the chase. Once the suspect car came to a halt, the officers took the driver, a passenger named Darren Mathews,[5] and Patrick into custody. Patrick and Mathews later were released without any charges having been filed against them.

The conduct of the officers in arresting Patrick formed the basis for Patrick's lawsuit. It was undisputed at trial that Patrick did not resist arrest. He alleged that excessive force had been used against him in that after he had been pulled from the auto through an open window and thrown face-down onto the sidewalk, at least one officer stepped on his face and kicked him in the head and the back. He claimed that as a result of this conduct, he received disabling neck and back injuries. However, Patrick was unable to identify specifically which of the officers had injured him,

---

an appeal of the award of attorney's fees to Patrick as a prevailing party in a § 1983 lawsuit. The parties have stipulated that this court's decision on the merits will be dispositive of the appeal of the award of attorney's fees.

3. The jury also assessed punitive damages against Clement in the amount of $8,000 and against Foster in the amount of $2,000.

4. On this issue, the defendants focused primarily on the court's having admonished Clement's attorney, both in and out of the presence of the jury, for the attorney's refusing to accept the court's ruling that the attorney could not cross-examine Patrick concerning the extent of his injuries. We believe that the court's behavior in this regard does not warrant reversal. Whether the ruling was legally correct or was error, the court had ruled, and it appropriately admonished Clement's counsel for refusing to proceed in accordance with the ruling.

The other alleged error in relation to the bias claim was the court's statement to Clement's attorney that Clement was a "bad cop." The court made this statement, however, after the jury had returned its verdict and had been discharged.

On the whole, we do not believe that the district court's handling of the trial indicates that it was hostile to Clement as a party, that it had made an unwarranted prejudgment of the case, or that it had aligned itself with the plaintiff. *See Anderson v. Sheppard,* 856 F.2d 741, 745 (6th Cir.1988).

5. Mathews also brought a § 1983 action claiming excessive force, which was consolidated with Patrick's claim. The jury awarded Mathews $17,000 in compensatory damages and $7,500 in punitive damages against Clement. Clement is not appealing this award.

because he was face-down on the concrete when the allegedly wrongful conduct occurred.

The lawsuit originally was brought against the City of Detroit and eleven police officers, including Clement and Foster. The city was dismissed as a party prior to trial. At the end of the plaintiffs' proof, the eleven officers moved for a directed verdict, which was granted to all of them except Clement, Foster, and two others. The jury exonerated the two other officers and found the aforementioned liability on the part of Clement and Foster.

It was discovered prior to the beginning of the trial that there was a possible conflict between the defense of Officer Clement and that of the other officers. Therefore, the attorney who originally had represented all of the defendants ceased representing Clement, who was provided separate counsel.

During Patrick's case-in-chief, the district court permitted his attorney to bifurcate Patrick's testimony between the liability and damages issues so that the case could be understood more easily. After Patrick had testified concerning liability, both defense attorneys cross-examined him. After Patrick had been recalled and had testified concerning the issue of damages, however, only the attorney who represented the officers other than Clement cross-examined Patrick with respect to damages. Clement's attorney asked Patrick no questions at this point; however, the attorney stated to the court:

> Your Honor, I have no questions at this time, I'd like to reserve the right to call him when and if we have to present a defense.

Joint Appendix 80. The court made no adverse ruling on, or response of any kind, to this request, and Patrick's attorney made no objection to it.

The defendants moved for a directed verdict after the plaintiffs' case-in-chief. With respect to the four officers whose motion the district court denied, the court stated:

> [S]ince we know an injury occurred; since we know, taking the testimony in the light most favorable to the Plaintiffs, that excessive and unnecessary force was used; and since we know the universe of the officers that were involved but we don't know which ones specifically; under those circumstances the law imposes the burden on them to point out who was involved and who was not involved; and if they can't carry that burden they are jointly responsible and they can sort out their liability as among themselves.

Joint Appendix 111. At this point in the trial, the district court, in denying the directed verdict for the defendants, thus shifted the burden to the defendants each to prove that he was not a cause of Patrick's injuries.[6]

During Clement's presentation of his proof, his attorney called Patrick to the stand. Clement's attorney attempted to question Patrick concerning employment applications that Patrick had completed after the car-chase incident, in which Patrick had stated that he had no back pain or back injuries. This was intended to impeach direct examination testimony by Patrick and others that as a result of the injuries Patrick had received, he had neck and lower back injuries that were disabling to some degree. The court prohibited this line of questioning, calling the testimony "cumulative." After several exchanges between Clement's attorney and the court, the court stated to the attorney:

> You may not inquire of this witness with regard to anything that occurred on the damage element of this case. This witness was called. You had ample opportunity to cross-examine him and you have shown no reasons why these questions could not have been asked initially.

Joint Appendix 123.

Clement's attorney attempted to explain that he had called Patrick as an adverse party, a tactic permitted by the Federal Rules of Evidence. He asked that the testimony be permitted at least as proof in mitigation of damages. However, the

---

**6.** Clement and Foster make no claim of error as    to this determination by the court.

court ruled that Clement's attorney could not establish any claim of mitigation of damages through Patrick. Rather, he would have to do that by using other witnesses.

On the following trial day, Clement's attorney made an offer of proof concerning the testimony he had attempted to elicit concerning the extent of Patrick's injuries, reminding the court that he had reserved the right to call Patrick to question him about the extent of his injuries if it became necessary for his client to put on a defense. The court stated that the prior reservation was of "no consequence." Quoting Federal Rule of Evidence 611(a), the court ruled that it had the authority to decline this request, because Clement's attorney was given an opportunity to cross-examine Patrick during Patrick's case-in-chief and had not stated the reasons why he wanted to recall Patrick. The court also ruled that Clement's attorney had not suggested when he made his reservation that he had not completed his cross-examination.

After the parties had made arguments to the jury, the court gave the following jury instructions in pertinent part:

> In order to prove a Plaintiff's claim, the burden is upon the Plaintiff to establish, by a preponderance of the evidence in the case, the following:
>
> First, a Defendant knowingly beat and bruised him about the head and body, as alleged;
>
> Second, that Defendant then and there acted under color of law;
>
> Third, that Defendant's acts and conduct deprived the Plaintiff of his Federal Constitutional right to be secure from unreasonable seizure;
>
> Fourth, that Defendant's acts and conduct were the proximate cause of injury and consequent damages to a plaintiff;
>
> Fifth, the extent and nature of his injuries and damages.
>
> . . . .
>
> You may decide that the conduct of a Defendant was a proximate cause. If you decide that one or more of the Defendants beat and bruised a Plaintiff and that such conduct was a proximate cause of an injury it is not a defense that the conduct of any other person also may have been a cause of the injury. Each Defendant is entitled to separate consideration as to whether his or her conduct was a proximate cause of injury.
>
> . . . In a situation where several individuals participate in a wrongful act through commission or omission and it is impossible to tell which of them caused specific injuries, the burden shifts to the Defendants themselves to prove they were not the proximate cause of any specific injury. Failing in that proof leaves them liable for all damages caused by the injury itself.
>
> Now let me go to damages.
>
> . . . .
>
> You should include each of the following elements of damage which you decide has been sustained by a Plaintiff to the present time [and in the future]:
>
> With regard to Mr. Patrick; the physical pain and suffering, mental anguish, fright and shock, denial of social pleasures and enjoyment, embarrassment and humiliation, the disability including the loss or impairment of physical ability in his neck and back, the pain caused by headaches, the reasonable expenses of necessary medical care, treatment and services [and the loss of earning capacity].
>
> . . . .
>
> If an element of damage is of a continuing nature, you shall decide how long it may continue. If an element of damage is permanent in nature, then you shall decide how long the particular Plaintiff is likely to live.

Trial Transcript 1128–1134. The jury found Clement and Foster jointly and severally liable for $300,000 in compensatory damages.

## II.

■ Fed.R.Civ.P. 43(b), entitled "Evidence," was abrogated in 1975, contemporaneously with the effective date of the Federal Rules of Evidence. This procedural rule had provided in pertinent part:

A party may call an adverse party ... and interrogate him by leading questions and contradict and impeach him in all respects as if he had been called by the adverse party....

Fed.R.Civ.P. 43(b) (abrogated in 1975). The calling and cross-examining of the plaintiff has been permitted when the plaintiff has testified concerning liability on direct examination, has been cross-examined on liability immediately thereafter, and has been recalled by the defendant to question him further concerning liability. *Cf. Gallis v. Peelle Co.*, 264 F.2d 663 (2d Cir.1959) (newly offered impeachment evidence was not introduced so late that the reply to it would unduly prolong the trial). The Advisory Committee Notes relating to the 1972 Amendment to Rule 43 indicated that subdivision (b) no longer would be needed because the matters with which it dealt would be treated in the Federal Rules of Evidence, particularly Rules 607 and 611(b) and (c).

Fed.R.Evid. 607 provides: "The credibility of a witness may be attacked by any party, including the party calling the witness." Fed.R.Evid. 611(b) and (c) provide:

**Mode and Order of Interrogation and Presentation**

. . . .

**(b) Scope of cross examination.** Cross-examination should be limited to the subject matter of the direct examination and matters affecting the credibility of the witness. The court may, in the exercise of discretion, permit inquiry into additional matters as if on direct examination.

**(c) Leading questions.** Leading questions should not be used on the direct examination of a witness except as may be necessary to develop the witness' testimony. Ordinarily leading questions should be permitted on cross-examination. When a party calls a hostile witness, *an adverse party,* or a witness identified with an adverse party, interrogation may be by leading questions.

(Emphasis added.)

We believe that these rules of evidence, combined with the advisory comments concerning the abrogation of Rule 43(b), resulted in a subsumption into the Federal Rules of Evidence of the right that had been established by this procedural rule. In other words, the right continues to exist, simply as a matter of evidence rather than as a matter of procedure.

■ In the instant case, the statement by Clement's attorney to the court clearly indicated that he had decided not to explore the issue of damages until he had made, and the court had ruled on, an anticipated motion for a directed verdict. Only after the motion was made and denied did Clement's attorney desire to pursue the issue of damages. The attorney chose to pursue the issue by calling and examining the plaintiff, a tactic that is permitted.

Counsel for Patrick argues that Clement's attorney's statement to the court was not a sufficiently clear reservation of the right to call Patrick during Clement's presentation of his proof to examine him concerning the extent of his injuries. He asserts that Fed.R.Evid. 611 requires such a reservation. He apparently relies on subsection (a) of the rule, the same subsection upon which the district court relied.

Fed.R.Evid. 611(a) provides:

**Mode and Order of Interrogation and Presentation**

**(a) Control by court.** The court shall exercise reasonable control over the mode and order of interrogating witnesses and presenting evidence so as to (1) make the interrogation and presentation effective for the ascertainment of the truth, (2) avoid needless consumption of time, and (3) protect witnesses from harassment or undue embarrassment.

■ We do not believe that Rule 611(a) was intended to undercut the right of a party to call the opposing party and cross-examine him when, as here, the party calling the opposing party did not examine him earlier on the subject matter of the proposed examination. Moreover, we believe that this is especially true when, as here, the party has clearly indicated to the court his intention to exercise the right and the court has not indicated disapproval. Ac-

cordingly, we conclude that the district court erred when it applied Fed.R.Evid. 611(a) as authority to prevent counsel for Clement, after calling Patrick as a witness, from cross-examining him with respect to the extent of his injuries. Because we need go no further in ruling on the import of Rule 611(a) to decide the issue before us, we do not otherwise determine the scope of authority that a district court has under this rule to limit the right under Fed.R. Evid. 607 and 611(b) and (c) to call as a witness and cross-examine an opposing party.

### III.

■ We next must determine the effect of the district court's error. The joint and several nature of the judgment against Clement and Foster is central to this analysis.

When the district court denied the four defendants' motions for a directed verdict, it at that time, as seen, shifted the burden to these defendants each to prove that he was not a person who had proximately caused any injury that Patrick received. The court apparently was satisfied that Patrick had sufficiently shown that at least one of the remaining defendants had proximately caused any such injury, but that because of the circumstances relating to the injury, Patrick could not specifically identify who was (or were) a proximate cause. The defendants, who made and now make no objection to the district court's ruling, were placed at risk of being held jointly and severally liable for whatever amount of compensatory damages the jury might award.

Moreover, the district court's instructions to the jury shifted the burden of proof on the proximate cause question to the defendants. The court instructed the jury that it could find joint and several liability if it found the other elements of liability as to more than one defendant and those defendants each did not prove that he was not a proximate cause of Patrick's injuries. Again, the defendants made and now make no objection to these instructions. The accompanying verdict form asked the jury to determine only one amount of compensatory damages regardless of the number of defendants the jury found liable.[7]

The resulting jury verdict found Clement and Foster jointly and severally liable. Because neither Clement nor Foster objected and do not now object to the district court's charge as to the requirements for liability, we need not concern ourselves with the validity of the charge.

Nevertheless, Clement's attorney, who represents both Foster and Clement on appeal, contends that both defendants are entitled to a new trial on the question of liability. He relies on *Johnson v. Glick*, 481 F.2d 1028 (2d Cir.), *cert. denied*, 414 U.S. 1033, 94 S.Ct. 462, 38 L.Ed.2d 324 (1973), for the proposition that in a § 1983 suit alleging excessive force by police officers to effect an arrest, a crucial factor in determining whether there has been a constitutional violation is the extent of the plaintiff's injury. His theory is that if the jury had believed from the prohibited testimony that Patrick's injuries were less severe than he claimed at trial, the jury could

---

7. The verdict form relevant to Patrick's claim against Clement and Foster provided in pertinent part:

   Part I.
   A. We, the jury, on his claim of wrongful conduct against Walter Clement find for: Joseph L. Patrick, or Walter Clement.
   B. We, the jury, on his claim of wrongful conduct against Anselm Foster find for: Joseph L. Patrick, or Anselm Foster.
   . . . .
   Part II, answer this part as to any Defendant who you found wronged Jospeh L. Patrick in Part I.

   A. We, the jury, find that Joseph L. Patrick suffered damages proximately cause [sic] by the wrongful conduct of Walter Clement: yes or no.
   B. We, the jury, find that Joseph L. Patrick suffered damages proximately caused by the wrongful conduct of Anselm Foster: yes or no.
   . . . .
   Part III. Answer this part if you find in favor of Joseph L. Patrick as to any Defendant under Part I and Part II.
   We, the jury, find Joseph L. Patrick's damages to be: dollar amount.
   Trial Transcript 1144–45.

have found that excessive force was not applied. It would logically follow, therefore, that if excessive force were not applied, then neither Clement nor Foster would be liable.

We do not accept this argument. *Johnson v. Glick* applied a substantive due process analysis to a § 1983 claim by a pretrial detainee that a guard had assaulted him. There, the Second Circuit held that the factors relevant to determining whether the detainee had been deprived of liberty without due process of law were as follows: (1) the need for the application of force, (2) the relationship between the need for force and the amount of force used, (3) the extent of injury inflicted, and (4) whether the force was applied in good or bad faith. *Id.* at 1033.

In *Tennessee v. Garner,* 471 U.S. 1, 105 S.Ct. 1694, 85 L.Ed.2d 1 (1985), however, the Supreme Court declared that the appropriate analysis of a claim made by an arrestee that police officers used excessive force against him is an analysis under the fourth amendment's reasonableness standard. The Court recently reaffirmed this rule in *Graham v. Connor,* —— U.S. ——, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989). Moreover, in *Graham,* the Court explicitly stated that a substantive due process analysis is inappropriate in a case such as the instant one. *Id.,* 109 S.Ct. at 1871.

■ The reasonableness standard requires balancing the extent of the intrusion on the fourth amendment interests of the person arrested against the government's interest in effective law enforcement. The correct focus of the fourth amendment question is whether, from the perspective of a reasonable officer, who many times must make split-second decisions, the force used was reasonable under the circumstances. This is a fact-specific inquiry that depends on factors such as the severity of the crime at issue, whether the suspect poses a threat to anyone, and whether the suspect is attempting to escape or is resisting arrest. *Id.*

While we agree that in some cases evidence relating to the extent of a § 1983 plaintiff's injuries may be relevant to the question of whether force used by the police was excessive under the circumstances, this case is not such a case. Here, the testimony that Clement's attorney was not allowed to elicit from Patrick was minimally, if at all, relevant to the question of excessive force. Clement's attorney attempted to elicit whether Patrick had truthfully answered questions on employment applications, which Patrick had completed six months to a year after the car-chase incident, in a way that tended to show that Patrick had exaggerated the extent of his injuries to the jury.

Specifically, Patrick had answered "No" to "Backache" and to "Serious injury, illness, broken bones or back injury?" On one application, "No" to "Have you ever had any pain in your back at any time?" on another, and "I can handle medium work [and] heavy work" on yet another. While we agree that this testimony would tend to show that Patrick exaggerated the effects that his injury had on him subsequent to the incident at issue, we do not believe that this evidence tends to prove or disprove that the force used by Clement and Foster when they arrested Patrick was unreasonable under the circumstances. Therefore, the district court's error does not require reversal on the question whether Clement and Foster are liable to Patrick.

On the other hand, with respect to the award of damages in this case, the prohibited testimony was relevant. It related directly to elements of damages such as pain and suffering, future medical treatment, and the continuing nature of the injury, which, according to the district court's instructions to the jury, were key determinants of the total amount of the award, if any, Patrick was to receive.

Patrick argues that if this court were to reverse only on the issue of damages, Clement alone is entitled to this remedy. He contends that because Foster cross-examined Patrick concerning the extent of his injuries, there can be no reversal as to Foster on the issue of damages. We cannot agree with this proposition, because it fails to take into account the joint and several nature of the defendants' liability.

In the instant case, the jury did not apportion the award of compensatory damages between Clement and Foster. As stated earlier, the verdict form that the district court provided them did not make an allowance for apportionment. This failure to apportion was appropriate under the circumstances, because apportionment is improper when only joint and several liability is to be considered. *See Thomas v. Booker*, 784 F.2d 299, 307 (8th Cir.), *cert. denied*, 476 U.S. 1117, 106 S.Ct. 1975, 90 L.Ed.2d 659 (1986); *Bell v. Mickelsen*, 710 F.2d 611, 619 (10th Cir.1983).

Although Foster's attorney did cross-examine Patrick concerning the extent of his injuries, the testimony that Clement's attorney attempted to introduce related directly to the jury's determination of a total amount of money to be awarded to Patrick. The jury could have believed from the proffered testimony that Patrick's injuries were not as severe or as lasting as he had claimed. Such a belief could have resulted in an award of a lesser amount of compensatory damages. Because the jury, in accordance with the instructions given, arrived at only one total amount of damages regardless of the number of defendants it found liable, the monetary benefit of a lesser award necessarily would have enured to both Clement and Foster. Therefore, the joint and several nature of the liability, which we affirm, requires us to order a new trial for both defendants on the question of the amount of compensatory damages.

In summary, because we find that the defendants are not entitled to a new trial on the question of liability, we AFFIRM the judgment to the extent that Clement and Foster were found jointly and severally liable. However, we REVERSE the judgment to the extent that it holds Clement and Foster liable in the amount of $300,-000, and we REMAND the case to the district court to conduct a new trial solely to determine the amount of compensatory damages for which these two defendants are to be held jointly and severally liable.[8]

---

8. Because we contemplate that some amount of compensatory damages will be awarded in the new trial, we do not disturb the award of punitive damages to Patrick, which was made in accordance with jury instructions that were not challenged by either defendant. Moreover, because we hold that neither defendant is entitled to a new trial on the liability issue, we find no reason to disturb the award of attorney's fees to Patrick in related case No. 89–1637. Further, in accordance with the stipulation of the parties, we will not disturb the denial of the award of attorney's fees to the defendants who were dismissed from the action before the case was submitted to the jury.