**Harry J. WEEKS, Plaintiff–Appellant/Cross–Appellee,**

v.

**L.R. CHABOUDY, M.D., Defendant–Appellee/Cross–Appellant.**

**Nos. 91–3856, 91–3993, 91–3994.**

United States Court of Appeals, Sixth Circuit.

Argued Oct. 15, 1992.

Decided Jan. 26, 1993.

Order Denying Petition for Rehearing April 16, 1993.

Alphonse A. Gerhardstein (argued and briefed), Laufman, Rauh & Gerhardstein, Cincinnati, OH, for plaintiff-appellant/cross-appellee.

Christian B. Stegeman, Asst. Atty. Gen. (argued and briefed), Federal Litigation Section, Cincinnati, OH, for defendant-appellee/cross-appellant.

Before: MERRITT, Chief Judge; and NORRIS and BATCHELDER, Circuit Judges.

MERRITT, Chief Judge.

Inmate Harry Weeks sued prison medical director L.R. Chaboudy under the Eighth Amendment for "deliberate indifference to serious medical needs" in violation of *Estelle v. Gamble*, 429 U.S. 97, 104, 97 S.Ct. 285, 291, 50 L.Ed.2d 251 (1976). The District Court, Weber, J., granted plaintiff's motion for summary judgment on the issue of liability, determined plaintiff's damages to be $50,000, and ordered defendant to pay plaintiff $5,000, or 10% of the total damages. Plaintiff appeals the 90% reduction of the damage award. Defendant cross appeals, claiming that the summary judgment order awarding plaintiff damages and injunctive relief was error. For the reasons expressed below, we affirm the District Court's summary judgment on the issue of liability against Defendant, reverse the apportionment of damages and remand for a proper assessment under federal law. We also reverse the order of injunctive relief.

## FACTS

The following facts were uncontroverted, and were cited by District Judge Weber in his 1/8/91 Order granting plaintiff's motion for summary judgment ("S.J. Order"):

Plaintiff Harry Weeks was incarcerated at Southern Ohio Correctional Facility from 1978 until his parole on September 9, 1988. Defendant L.R. Chaboudy, medical director (now retired) at the prison, was Weeks' treating physician for much of this time, including the period from May 3, 1983 to February 4, 1985, which is the period during which Weeks alleges his Eighth

Amendment rights were violated. In 1982, Weeks suffered a conversion reaction,[1] whereby he was paralyzed from the waist down. From May 3, 1983, to February 4, 1985, Weeks was housed in "administrative control," "security control," or "local control," areas that were most restrictive with respect to inmate privileges. Wheelchairs were not permitted in these areas (nor were they available in any other part of the prison except the infirmary).

Dr. Chaboudy had the authority to admit Weeks to the prison infirmary. It was the accepted practice to keep paralyzed inmates in the infirmary because it was the only area of the prison equipped to cater to their needs. In fact, another prison doctor admitted Weeks to the infirmary in 1986 at the request of the prison warden, and Weeks remained there until his parole in 1988. Dr. Chaboudy knew that Weeks would not have access to a wheelchair if not admitted to the infirmary. He wrote on February 15, 1983 that Weeks was "presently locked in J Block so this negates the use of a wheelchair in his particular area. We will pursue other avenues of consultation and see if we can't derive some disposition of this man other than here in the infirmary." No other disposition was found or attempted by the defendant.

As a result of being denied the use of a wheelchair, Weeks was unable to take advantage of his limited out-of-cell time, or to shower himself. He could not care for his person or clean his cell.

## CONSTITUTIONAL VIOLATION

Dr. Chaboudy challenges the District Court's conclusion that he violated Weeks' Eighth Amendment rights. He points out that he never had actual knowledge that Weeks was unable to clean himself or to move about his cell. He claims that the District Court's assessment of liability required a determination of his intent, a finding he asserts is impermissible on a motion for summary judgment. He further argues that as a public official, he should enjoy qualified immunity from suit.

In *Estelle v. Gamble*, 429 U.S. 97, 104–05, 97 S.Ct. 285, 291, 50 L.Ed.2d 251 (1976),

the Supreme Court held that "deliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain ... proscribed by the Eighth Amendment" (citation omitted), and that such deliberate indifference "states a cause of action under [42 U.S.C.] § 1983."

Contrary to Defendant's assertion, a determination of deliberate indifference does not require proof of intent to harm or a detailed inquiry into his state of mind. In *Leach v. Shelby County*, 891 F.2d 1241 (6th Cir.), *cert. denied*, 495 U.S. 932, 110 S.Ct. 2173, 109 L.Ed.2d 502 (1989), we found that the "deplorable" conditions under which inmate Leach was incarcerated (he was not bathed or given a hospital mattress for several days, in spite of his paraplegic condition) established that his serious medical needs were deliberately ignored. In this case, it is uncontroverted that Dr. Chaboudy knew of Weeks' paraplegia. He knew that Weeks was not permitted a wheelchair in his Block J cell. He could admit Weeks to the infirmary if he so chose. He refused to admit Weeks to the infirmary. These facts establish that he was deliberately indifferent to Weeks' serious medical needs, as Judge Weber found.

Dr. Chaboudy counters that a conversion reaction is a psychiatric disorder and therefore cannot constitute a medical need, serious or otherwise. We find no support for this argument. Paralysis is a medical disorder whether induced by physical injury or emotional or mental problems. Mental illness is no less real than other illness.

Defendant's reliance on lack of actual knowledge is also unavailing. Judge Weber found that "Dr. Chaboudy, by virtue of his long tenure at the facility, should have known that his refusal to admit the plaintiff to the infirmary would result in the conditions which he did in fact endure ..." We agree that the squalor in which Weeks was forced to live as a result of being denied a wheelchair was clearly foreseeable by Dr. Chaboudy.

We must also affirm the District Court's rejection of Defendant's claim of qualified immunity. Under the Supreme Court's test in *Anderson v. Creighton*, 483

---

**1.** A "conversion reaction" was defined by Dr. Chaboudy in his Affidavit as "a process where emotions become transformed into physical, either motor or sensory, manifestations, i.e. hysterical blindness, hysterical paralysis." The di-

agnosis was made by Dr. Gindin, a neurosurgeon at Scioto Memorial Hospital, to whom Chaboudy referred Weeks for evaluation in December of 1982.

U.S. 635, 638–39, 107 S.Ct. 3034, 3038–39, 97 L.Ed.2d 523 (1987), Chaboudy is not entitled to qualified immunity if he violated clearly established law of which a reasonable prison physician would have been aware. Defendant argues that the District Court improperly considered an Eighth Circuit case, *Cummings v. Roberts,* 628 F.2d 1065 (8th Cir.1980), as established law of which he should have been aware. In *Cummings,* the plaintiff sued the director of security at the St. Louis, Mo. city jail for failure to provide him with a wheelchair after he sustained a back injury at the jail, asserting that the deprivation prevented him from maintaining adequate hygiene. The case is therefore directly on point.

In *Ohio Civil Service Employees Ass'n v. Seiter,* 858 F.2d 1171 (6th Cir.1988), we set out a test under which decisions of other courts may become clearly established law chargeable to government officials: "those decisions must both point unmistakably to the unconstitutionality of the conduct complained of and be so clearly foreshadowed by applicable direct authority as to leave no doubt in the mind of a reasonable officer that his conduct, if challenged on constitutional grounds, would be found wanting." *Id.* at 1177. *Cummings* passes this test. Not only was the challenged official conduct nearly identical, but the Eighth Circuit in *Cummings* based its determination of a valid cause of action on *Estelle v. Gamble,* 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976), which certainly constitutes "applicable direct authority" that "clearly foreshadowed" the outcome.

Furthermore, the District Court cited our decision in *Leach,* in which we concluded that Shelby County jail employees should have been aware in 1983 (the same time period as the events in the case *sub judice* ) that their deliberate indifference to the medical needs of paraplegic inmates constituted an Eighth Amendment violation, based on *Estelle.* 891 F.2d at 1244. Under these circumstances, the defense of qualified immunity simply is not available.

## DAMAGES

■ Having determined that Dr. Chaboudy caused the harms suffered by Weeks, we turn now to the issue of damages. The District Court found that "the damages requested by plaintiff in the amount of $50,000 are reasonable and proper to compensate him and to vindicate his Eighth Amendment rights ..." S.J. Order

at 11. Rather than entering a judgment against Defendant for this amount, however, the District Court went on to apportion liability for the damages between Defendant and other prison personnel who were never properly before him:

> "[T]he major responsibility for those damages rests with those who observed the plaintiff and his condition daily: the security personnel and medical personnel who came into the blocks on medical rounds. Accordingly, comparing their responsibilities with the defendant's ... the Court finds that those security and medical personnel were responsible for 90% of the total amount of the damages claimed and the defendant is responsible for 10% of those damages ..."

*Id.* We must determine whether this apportionment of damages is permitted in actions brought pursuant to § 1983.

The Supreme Court has held that 42 U.S.C. § 1988 directs courts to follow a three-step process in determining the rules of decision applicable to civil rights claims:

> First, courts are to look to the laws of the United States "so far as such laws are suitable to carry [the civil and criminal rights statutes] into effect." [42 U.S.C. § 1988.] If no suitable federal rule exists, courts undertake the second step by considering application of state "common law, as modified and changed by the constitution and statutes" of the forum state. *Ibid.* A third step asserts the predominance of the federal interest: courts are to apply state law only if it is not "inconsistent with the Constitution and laws of the United States." *Ibid.*

*Wilson v. Garcia,* 471 U.S. 261, 267, 105 S.Ct. 1938, 1942, 85 L.Ed.2d 254 (1984) (quoting *Burnett v. Grattan,* 468 U.S. 42, 47–48, 104 S.Ct. 2924, 2928, 82 L.Ed.2d 36 (1984)) (brackets in original). We conclude that a federal rule exists, and that it was not properly applied by the District Court.

The Supreme Court outlined the common-law rule of joint and several liability in *Edmonds v. Compagnie Generale Transatlantique,* 443 U.S. 256, 99 S.Ct. 2753, 61 L.Ed.2d 521 (1979): "[T]he common law ... allows an injured party to sue a tortfeasor for the full amount of damages for an indivisible injury that that tortfeasor's negligence was a substantial factor in causing, even if the concurrent negligence of others contributed to the incident." *Id.* at 260, 99 S.Ct. at 2756. The court then continued in a footnote:

A tortfeasor is not relieved of liability for the entire harm he caused just because another's negligence was also a factor in effecting the injury. 'Nor are the damages against him diminished.' ... A concurrent tortfeasor generally may seek contribution from another, ... but he is not relieved from liability for the entire damages even when the nondefendant tortfeasor is immune from liability.... These principles, of course, are inapplicable where the injury is divisible and the causation of each part can be separately assigned to each tortfeasor.

*Id.* at 260–61 & n. 8, 99 S.Ct. at 2756 & n. 8 (quoting Restatement (Second) of Torts §§ 433A, 879, 886A, 880, and 881).

*Edmonds* was an admiralty case, but other courts, including this one, have applied the principles expressed therein to § 1983 claims. *See, e.g., Patrick v. City of Detroit,* 906 F.2d 1108, 1114–16 (6th Cir. 1990) (jury instruction on joint and several liability was proper, and "apportionment is improper when only joint and several liability is to be considered"); *Watts v. Laurent,* 774 F.2d 168 (7th Cir.1985) (former inmate at youth center may recover entire judgment from any of the defendants found liable); *Finch v. City of Vernon,* 877 F.2d 1497, 1503 (11th Cir.1989) ("In this case, the district court, applying a federal rule of damages, correctly held the City jointly and severally liable for the damages Finch suffered from the wrongful discharge.")

Although other prison personnel were not parties to the action,[2] the District Court found concurrent liability for the harms suffered by Weeks:

> Unquestionably, the bulk of responsibility for damages falls on the security personnel who ignored the condition of the plaintiff and refused to help him properly clean his person or cell. It was the security personnel who constantly observed Weeks and knew the conditions he endured because he could not walk and had no access to a wheelchair outside his cell.

S.J. Order at 9. However, applying the principles of joint and several liability set

forth *supra,* the actions of concurrent tortfeasors are irrelevant regarding an indivisible injury. To recover his full damages from Dr. Chaboudy, it was only necessary for Weeks to show that the Defendant was the proximate cause of his injury.

The District Court found that Dr. Chaboudy was the proximate cause of Weeks' harm:

> Since the infirmary was the only place plaintiff could have access to a wheelchair, assignment thereto was a strictly medical decision, and a wheelchair was not being provided by the security personnel in the block, the defendant was the only one in a position to change plaintiff's circumstances.... His failure to act cannot be excused by a claim of reliance upon others, including the security personnel.

S.J. Order at 10–11. That other prison personnel were aware of Weeks' predicament may render them liable *as well,* but it cannot diminish Defendants' liability. We must therefore reverse the District Court's order insofar as it limits Defendant's liability to 10% of Plaintiff's damages.

## INJUNCTIVE RELIEF

■ Defendant asserts that the District Court's award of injunctive relief on behalf of Plaintiff was error. The District Court's S.J. Order provides: "In addition, the Court hereby ORDERS the defendant to prescribe a wheelchair for the plaintiff in the event plaintiff is violated [sic] on parole and returns to SOCF in the same paralyzed condition he has been in at all times relevant to this case." S.J. Order at 11. Dr. Chaboudy argues that since Weeks has been released on parole and since Dr. Chaboudy is no longer the medical director of the prison, Weeks' claim for injunctive relief is moot.

In *Mosley v. Hairston,* 920 F.2d 409 (6th Cir.1990), we considered mootness of injunctive relief in the context of the defendant's compliance with pass-through provisions of the Aid to Families with Dependent Children program. We held that "[a]lthough voluntary cessation of wrongful conduct does not automatically render a

**2.** R.C. Marshall, the prison Warden, was originally named as a defendant. He apparently was dropped from the case for the reasons expressed in Defendant's Proposed Findings of Fact and Conclusions of Law, 9/19/90, No. 11: "The only defendant in this action is Dr. Chaboudy, as the plaintiff never served deceased SOCF Warden Ron Marshall with copy of the complaint and summons, nor did he ever attempt to bring in Marshall's estate." The District Court never addressed this point in any of his orders, although his S.J. Order has only Chaboudy listed in the caption.

case moot, 'the case may nevertheless be moot if the defendant can demonstrate that there is no reasonable expectation that the wrong will be repeated.'" *Id.* at 415 (quoting *United States v. W.T. Grant Co.*, 345 U.S. 629, 633, 73 S.Ct. 894, 897, 97 L.Ed. 1303 (1953)). Our reasoning in *Mosley* is applicable here.

As Defendant has pointed out, the injunction is against Dr. Chaboudy personally, and since he has retired from his post as medical director of the prison, he cannot possibly comply. Furthermore, there is no evidence in the record that Plaintiff's paralysis is permanent. Should he violate parole and be reincarcerated (and we see no reason to presume that this will occur), he may no longer require a wheelchair. Finally, prison personnel have already demonstrated a willingness to provide medical care consistent with this opinion; Weeks was admitted to the infirmary for the last two years of his incarceration.

In light of these facts and our disposition of the other issues in this case, we conclude that there is "no reasonable expectation that the wrong will be repeated," and the injunction is therefore improper.

CONCLUSION

The District Court in its summary judgment Order has not erred in its grounds for finding Defendant liable for violating Plaintiff's Eighth Amendment rights. The Court's apportionment of damages based on these factual findings is inconsistent with federal law. We therefore AFFIRM that portion of the Order rendering judgment in favor of Plaintiff against Defendant. We REVERSE those portions of the Order holding Defendant liable for only 10% of Plaintiff's damages, and ordering injunctive relief.

Accordingly, the case is remanded to the District Court for further proceedings not inconsistent with this opinion.

ORDER DENYING PETITION
FOR REHEARING

April 16, 1993.

The court having received a petition for rehearing en banc, and the petition having been circulated not only to the original panel members but also to all other active judges of this court, and no judge of this court having requested a vote on the suggestion for rehearing en banc, the petition for rehearing has been referred to the original hearing panel.

Plaintiff earlier petitioned for rehearing, asserting that the Order and accompanying Opinion entered by this Court on January 26, 1993 did not address Defendant's cross-appeal of the attorney's fees awarded by the district court. We did not reverse the district court's award; it should therefore be considered affirmed. The defendant's challenge to the fee award was based directly on his challenge to the underlying merits of the case. Since the district court's finding of liability was affirmed, the basis for defendant's cross appeal on the award of attorney's fees no longer exists.

Plaintiff also requests that we remand for an award of attorney's fees for work done on the appeal. Since the district court will have the opportunity to consider on remand the award of additional fees regarding further work done in this case, we will not address the issue at this stage of the proceedings. Accordingly, plaintiff's petition is denied.

Defendant has also petitioned for rehearing en banc. The panel has reviewed the defendant's petition for rehearing and concludes that the issues raised in the petition were fully considered upon the original submission and decision of the case. Accordingly, defendant's petition is also denied.