68 F.3d 474
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Judy KUEHNE, Plaintiff-Appellee,
v.
Mary Jill HUGAN and Robert Plum, Defendants-Appellants,
The Cincinnati Reds, BPS Guard Service, Inc., d/b/a Burns
International Security Services; City of
Cincinnati; Lawrence Estes; Howard
Whitson; John Pettijohn; and
Joann Morrissey, Defendants.
 No. 94-3077.
 United States Court of Appeals, Sixth Circuit.
 Oct. 16, 1995.
 
 Before: BOGGS, SILER and GIBSON*, Circuit Judges.
 PER CURIAM.
 
 
 1
 Defendants, Mary Jill Hugan and Robert Plum, Cincinnati police officers, appeal the denial of their motion for summary judgment on the grounds of qualified immunity on plaintiff Judy Kuehne's claim of use of excessive force in this civil rights action, 42 U.S.C. Sec. 1983. For the reasons stated herein, we affirm the decision of the district court.
 
 I.
 
 2
 On September 14, 1990, Kuehne went to Riverfront Stadium in Cincinnati with her son Sandy and another companion to watch the Cincinnati Reds play baseball. While at the Stadium, Kuehne and her son were arrested. The circumstances underlying the arrest are in dispute.
 
 
 3
 Kuehne offered the following scenario. She had been given two tickets for the game by a local law firm. After purchasing a beverage at the concession area, she and her son returned to what they thought were their seats, but, in fact, they sat in the wrong section. A Burns security guard, Lawrence Estes, approached them and demanded to see their tickets. Estes was aggressive, agitated, red-faced and impatient. Kuehne was unable to find her ticket, whereupon they were told to leave the stadium. Estes called the police and Plum and Hugan, off-duty officers who were being paid by the Reds, responded. On their way to the gates, Officer Plum grabbed Kuehne's son's wrist, and Officer Hugan grabbed Kuehne and called her a "bitch." Hugan pushed Kuehne's forehead into a wall. Hugan and Plum pulled Kuehne's arms behind her and over her head in a very painful and forceful manner and then Plum grabbed Kuehne by the back of the neck and squeezed until she lost consciousness. Kuehne's son was arrested and called names by Plum. Kuehne and her son were placed in an elevator where she was hit in the back. Later, in a room Plum continued to use vulgar language to them. Plum pushed and shoved Kuehne's son and pulled his hair. Plum picked Kuehne up in her chair and slammed the chair to the ground and then he threw her across the room. Kuehne was held in this room for about forty minutes. Kuehne alleges that as a result of these actions she suffered various physical and psychological injuries.
 
 
 4
 Officers Plum and Hugan offer a vastly different version of the events surrounding Kuehne's arrest. They allege that they approached Kuehne and her son only after receiving complaints from other patrons that they were picking up food and drinks from the floor that had been left by other patrons. Plum and Hugan claim that there was also a question as to whether Kuehne and her son had entered the stadium properly and that only after they were unable to produce ticket stubs were they requested to leave. Kuehne and her son then refused to leave and cursed the officers. When Kuehne finally began to walk up the steps to leave, she swung and struck Hugan several times. Kuehne became increasingly loud, belligerent and disorderly. As this conduct continued, the officers decided to place her under arrest. As the handcuffs were applied, Kuehne began to resist in earnest. She was finally brought under control and removed from the stadium.
 
 
 5
 Kuehne filed suit in federal district court alleging that the arrest violated her constitutional rights under the Fourth and Fourteenth Amendments. The complaint also alleged that the arrest was malicious and that Hugan and Plum physically injured her. Additional allegations included claims of conspiracy, slander and the intentional infliction of emotional distress.
 
 
 6
 The district court denied summary judgment for Hugan and Plum with respect to their claim of qualified immunity on Kuehne's excessive force claim under the Fourth and Fourteenth Amendments.
 
 II.
 
 7
 Review of a district court's grant of summary judgment is de novo. Lavado v. Keohane, 992 F.2d 601, 605 (6th Cir.1993). Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Fed.R.Civ.P. 56(c); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986). In responding to a summary judgment motion, the non-moving party must set "forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). Accordingly, we review the district court's decision de novo.
 
 
 8
 "The doctrine of qualified immunity shields government officials performing discretionary functions from civil damages liability as long as their actions are reasonable in light of the legal rules that were clearly established at the time of their conduct." Flatford v. City of Monroe, 17 F.3d 162, 166 (6th Cir.1994) (citations omitted); see also Anderson v. Creighton, 483 U.S. 635, 637-39 (1987). "[T]he 'reasonableness' inquiry in an excessive force case is an objective one: the question is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." Graham v. Connor, 490 U.S. 386, 397 (1989) (citations omitted). In order "[t]o withstand a motion for summary judgment on the ground of qualified immunity, the plaintiff must establish: (1) an alleged violation which implicates clearly established law, and (2) facts sufficient to create a genuine issue that the alleged violation of that law actually occurred." Flatford, 17 F.3d at 166 (citations omitted).
 
 
 9
 Defendants contend, in conclusory fashion, that the test used to determine qualified immunity is an "objective" one and that the district court was required to determine the issue. They further contend that their conduct was objectively reasonably in light of the facts and circumstances confronting them at the time in question. This contention is without merit.
 
 
 10
 While the "reasonableness" standard in excessive force cases is an objective one, "if genuine issues of material fact exist as to whether the defendants actually did commit acts that would violate a clearly established right, then summary judgment on qualified immunity is improper." Walton v. City of Southfield, 995 F.2d 1331, 1336 (6th Cir.1993). Thus, while the "reasonableness" standard is a legal question to be determined by the court, "a court may not be able to make a determination if the exact character of the 'actions' that Anderson [v. Creighton] requires the court to consider is unknown." Brandenburg v. Cureton, 882 F.2d 211, 215 (6th Cir.1989) (citing Poe v. Haydon, 853 F.2d 418, 426 (6th Cir.1988), cert. denied, 488 U.S. 1007 (1989)). Here, the underlying facts are definitely disputed.
 
 
 11
 Although the court determines the applicable law, "[i]n this case, however, the jury becomes the final arbiter of appellant[s'] ... claim of immunity, since the legal question of immunity is completely dependent upon which view of the facts is accepted by the jury." Brandenburg, 882 F.2d at 215-16. Accordingly, the district court's denial of summary judgment was correct.[1]
 
 III.
 
 12
 Defendants finally contend that the district court erred by failing to consider the extent or lack of injury to Kuehne in assessing "their right to qualified immunity." This contention was not raised below and preserved for appeal. We accordingly reject it as meritless. In re Allied Supermarkets, Inc., 951 F.2d 718 (6th Cir.1991). However, even assuming arguendo that the issue had been properly preserved, this court has specifically rejected extent of injury as a crucial factor in a Sec. 1983 excessive force claim, and the fact that the district court did not consider the extent of injury was not erroneous. Patrick v. City of Detroit, 906 F.2d 1108 (6th Cir.1990).
 
 
 13
 AFFIRMED.
 
 
 
 *
 Honorable John R. Gibson, Circuit Judge of the United States Court of Appeals for the Eighth Circuit, sitting by designation
 
 
 [1]
 Johnson v. Jones, 115 S.Ct. 2151 (1995), held there is no jurisdiction to consider an appeal of a district court's denial of summary judgment on a qualified immunity defense when it found there was an underlying genuine issue of material fact that precluded summary judgment. As the parties did not have the benefit of that decision before argument, we have not decided this case on jurisdictional grounds