Marion BELL, as Administratrix of the Estate of Thomas L. Bell, and Marion Bell, Plaintiff–Appellee, Cross–Appellant,

v.

A–LEET LEASING CORPORATION, Citibank, N.A., Mercedes–Benz Manhattan, Inc., and Avery Agency, Inc., Defendants,

A–Leet Leasing Corporation and Citibank, N.A., Defendants–Appellants,

A–Leet Leasing Corporation, Defendant–Appellant, Cross–Appellee,

Mercedes–Benz Manhattan, Inc., Defendant–Appellee.

Nos. 33, 265, Dockets 88–7284, 88–7296.

United States Court of Appeals, Second Circuit.

Argued Sept. 16, 1988.

Decided Dec. 15, 1988.

Bradley B. Davis, New York City, for plaintiff-appellee, cross-appellant.

Wendy E. Wells, New York City, for defendants-appellants.

Cushing O. Condon, New York City (William P. Ford, John F. Boland, Ford Marrin Esposito Witmeyer, New York City, of counsel), for defendant-appellee.

Before KAUFMAN and MAHONEY, Circuit Judges, and McAVOY, District Judge.*

PER CURIAM:

Defendant-appellant and cross-appellee A–Leet Leasing Corporation ("A–Leet"), defendant-appellant Citibank, N.A. ("Citibank"), and plaintiff-appellee, cross-appellant Marion Bell ("Bell") appeal from a judgment entered upon a jury verdict in the United States District Court for the Southern District of New York, Gerard L. Goettel, *Judge*, for Bell against A–Leet and Citibank in the amount of $17,229, as remitted, plus interest and costs. On appeal, A–Leet and Citibank seek reversal of the judgment, or in the alternative a new trial. Bell seeks additer to the judgment and remand for trial on additional liability against A–Leet and Mercedes–Benz Manhattan, Inc. ("Mercedes–Benz"). We affirm the judgment of the district court.

In the spring of 1981, the late Dr. Thomas L. Bell desired to purchase a Mercedes–Benz automobile from Mercedes–Benz, a dealership in New York City. Because of a poor credit rating and a number of outstanding judgments against him, Dr. Bell could only lease the car. The financial transaction was as follows: Mercedes–Benz sold the car to A–Leet for $42,900. A–Leet paid Mercedes–Benz with a $15,000 down payment received from Dr. Bell and a $27,900 loan borrowed from Citibank. Dr. Bell's obligation, in addition to the $15,000 down payment, was to make an initial monthly payment of $3,027.15 to A–Leet and forty-five monthly payments of $1,009.05 to Citibank until Citibank's loan to A–Leet was retired, after which A–Leet was to receive the monthly payments.

After a number of monthly payments were received late and some were paid with checks that were later returned, A–Leet repossessed the car on January 3, 1983. Dr. Bell promptly commenced this action for damages. As finally amended, the complaint named as defendants A–Leet, Citibank, Mercedes–Benz and Avery Agency, Inc. ("Avery") (a defendant below, the repossessor of the vehicle). In October, 1983, Dr. Bell died and his wife Marion Bell was substituted as plaintiff (both as administratrix and individually, since she was a cosigner of the lease). Bell alleged inadequate credit disclosure in violation of 15 U.S.C. § 1601 *et seq.* (1982), wrongful repossession in violation of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.* (1982), overcharge for the car, usurious interest in violation of state law, failure to account for cash payments, and violation of N.Y.Gen.Oblig.Law § 5–702 (McKinney 1978 & Supp.1988) by failure to use plain language in the lease documents.

At the close of plaintiff's case, the district court dismissed all claims against Mercedes–Benz except a claim that Mercedes–Benz received, but did not account for, a $2,000 cash payment from Dr. Bell. This claim was decided in favor of Mercedes–Benz by the jury. Thereafter, the district court dismissed all claims against Avery and directed judgment in favor of Mercedes–Benz on all claims. The district court refused to dismiss plaintiff's claims against A–Leet or Citibank at the conclusion of plaintiff's direct case, and also denied these defendants' motion for a directed verdict at the close of trial. The jury found A–Leet and Citibank liable for

* The Honorable Thomas J. McAvoy of the United States District Court for the Northern District of New York, sitting by designation.

breach of contract, and rendered a verdict of $25,000 in damages.

Defendants A–Leet and Citibank moved for a new trial on the breach of contract claim, or alternatively, solely on the issue of damages. The district court denied the motion for a new trial, subject to plaintiffs' acceptance of a remittitur reducing the verdict to $17,229. The district court reasoned that measuring plaintiff's damages as the fair market value of the car at the time of repossession, as the jury was instructed to do, damages could only amount to $16,229. This figure was computed by subtracting the present value of Bell's future obligations for payments on the car (including the purchase option price), $26,671, from its retail value, $42,900, and adding to the resulting figure, $16,229, $1,000 representing the Bells' loss of use of the car. The jury's verdict of $25,000 in damages was almost fifty percent greater than the proper measure of damages, and was thus deemed excessive.

The only significant issue on appeal, out of the myriad raised by the parties, is whether the jury's finding is supported by the evidence presented at trial. Early in the litigation, the attorney for A–Leet and Citibank submitted answers to interrogatories that erroneously stated the number of monthly lease payments paid by Dr. Bell. The interrogatory answers mistakenly reflected checks sent by Dr. Bell that were dishonored by the bank on which they were drawn. Although successor counsel for A–Leet and Citibank detected the errors prior to trial, no steps were taken to correct them. The district court disagreed with the jury verdict, but concluded that the verdict was not "so contrary to the weight of the evidence as to require a new trial."

We conclude that the district court did not err in denying A–Leet and Citibank's motions for a new trial. It is clear that answers to interrogatories may be utilized as admissions. *Gadaleta v. Nederlandsch–Amerekaansche Stoomvart,* 291 F.2d 212, 213 (2d Cir.1961). " 'When there is conflict between answers in response to interrogatories and answers obtained through other questioning, either in deposi-tion or trial, the finder of fact must weigh all of the answers and resolve the conflict.' " *Freed v. Erie Lackawanna Ry. Co.,* 445 F.2d 619, 621 (6th Cir.1971) (quoting *Victory Carriers, Inc. v. Stockton Stevedoring Co.,* 388 F.2d 955, 959 (9th Cir. 1968)). This, we may infer, the jury did.

Our main purpose in publishing this opinion is to remind the counsel in this case, as well as all counsel appearing before this court, of the importance we place upon resolving appeals whenever possible through this circuit's Civil Appeals Management Plan ("CAMP"). CAMP was instituted by this circuit, pursuant to Fed. R.App.P. 33:

> (1) to encourage the resolution of appeals without participation by judges, thus preserving their scarcest and most precious asset, time; (2) to expedite the consideration of appeals that will be briefed and argued; (3) to have Staff Counsel help the parties clarify the issues on appeal; and (4) to dispose of minor procedural motions without expenditure of judicial resources.

Kaufman, *Must Every Appeal Run the Gamut?—The Civil Appeals Management Plan,* 95 Yale L.J. 755, 756 (1986); *see also* Kaufman, *The Pre-Argument Conference: An Appellate Procedural Reform,* 74 Colum.L.Rev. 1094, 1094 (1974).

CAMP does not deprive the parties of their right to appeal—this court fully recognizes that every party has a right to appeal a district court ruling. Moreover, the purpose of CAMP is not to pressure parties to settle or withdraw an appeal. Further, we recognize that, in the words of the hallowed jurisprudential maxim, "it takes two (in this case more) to tango," and one obdurate party or counsel can thus frustrate an otherwise available settlement without any blame legitimately attaching to the remaining *dramatis personae.*

Having said all this, we question whether a more meaningful effort at settlement, or at least at limiting the issues, might not have been made in this case, and remind the bar of its obligation to participate in the CAMP process, where applicable, seriously and in good faith.

**260**

The judgment of the district court is affirmed.