83 F.3d 423
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Gregory WALKER, Plaintiff-Appellant,
v.
Charles MULVIHILL, David Teolis, and City of Detroit,
Defendants-Appellees.
 No. 94-1508.
 United States Court of Appeals, Sixth Circuit.
 April 24, 1996.
 
 Before: MARTIN and RYAN, Circuit Judges; and KATZ, District Judge.*
 PER CURIAM.
 
 
 1
 Plaintiff appeals evidentiary rulings made during trial which, he claims, prejudiced his claim of excessive use of force during his arrest, brought pursuant to 42 U.S.C. § 1983, and which ultimately resulted in a verdict in favor of the defendants. For the reasons stated herein, we affirm the district court in part, reverse in part and remand for a new trial.
 
 I.
 
 2
 On February 17, 1989, Gregory Walker ("Walker") broke into the home of Maria Burke ("Burke"), threatened her, stuffed a rag into her mouth and stole a change purse before leaving her home. Shortly thereafter, the police were summoned and officers David Teolis ("Teolis") and Charles Mulvihill ("Mulvihill") arrived on the scene. The officers were met by Carol Tannous ("Tannous"), who along with another off-duty officer was able to provide police with a description of Walker. Upon cruising the area, the officers spotted Walker in an alley and began to chase him. Mulvihill caught up to Walker first and ordered him to drop his weapon, get on his knees and put his hands on his head. At this point, the parties' accounts diverge. At trial Walker testified that he began to comply with Mulvihill's request at which time Teolis allegedly jumped him from behind and proceeded to beat him. Mulvihill and Teolis, in contrast, testified that Walker had a crowbar hidden in his coat sleeve and attempted to use it against Teolis, as Teolis approached Walker from behind. Both officers also testified that Teolis struck Walker in the face more than once and that Walker struggled against arrest. As a result of the incident at the Burke home, Walker was convicted of breaking and entering. Thereafter, Walker initiated this lawsuit against Mulvihill, Teolis and the City of Detroit ("City") for violations of his civil rights under 42 U.S.C. § 1983, seeking compensatory and punitive damages that resulted from alleged use of excessive force during his arrest.
 
 
 3
 During the two-day trial, the District Court, over objection, allowed evidence regarding the details of Walker's underlying crime to be presented to the jury, including Burke's video testimony. The District Court also denied Walker's attempt to utilize Mulvihill's interrogatory answer as an admission for impeachment purposes. After the jury returned a verdict in favor of the defendants, the Court denied Walker's motion for a new trial. Walker filed this timely appeal.
 
 II.
 
 4
 We review a trial court's decision on the issue of admissibility of evidence for an abuse of discretion, Laney v. Celotex Corp., 901 F.2d 1319, 1320 (6th Cir.1990) and consider whether the decision is inconsistent with substantial justice. Doe v. Sullivan County, Tenn., 956 F.2d 545, 559 (6th Cir.), cert. denied, 506 U.S. 864 (1992). In doing so, we must view the evidence in the light most favorable to the proponent, giving the "evidence its maximum reasonable probative force and its minimum reasonable prejudicial value." Black v. Ryder/P.I.E. Nationwide, Inc., 15 F.3d 573, 587 (6th Cir.1994) (citations omitted).
 
 III.
 
 5
 Walker contends that the District Court erred in allowing extensive testimony regarding details of the criminal act by Walker against Burke, as that testimony was cumulative, inflammatory, had little or no relevance to the issues at trial and worked a substantial injustice toward the plaintiff. Under Fed.R.Evid. 403, relevant evidence may be excluded where the "probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."
 
 
 6
 In opening statements, plaintiff's counsel acknowledged that Walker broke into Burke's home, threatened her and robbed her. Walker's arrest and conviction for this crime were admitted to the jury. In his opening statement, counsel for the defense described in graphic detail the series of events preceding the arrival of officers Teolis and Mulvihill as follows:
 
 
 7
 Miss Burke is an elderly woman who was in her own home minding her own business when this man that I will prove to you treated her in a brutal and animalistic fashion when he grabbed her, choked her, pulled--he put a stocking, a pantyhose or stockings in her mouth causing her to bleed. He then forced her to the ground, threatened to kill her. And he [Walker] then says to her, I'll saw your finger off when he saw the diamond ring from her widow husband and said, give me that ring.
 
 
 8
 J.App. at 164.
 
 
 9
 Walker testified that he did, in fact, break into Burke's home and rob her. He then testified that he was chased by the defendants and that they beat him up sufficiently to necessitate medical attention. Defense counsel did not cross-examine Walker. Tannous testified as to what she observed when first encountering Burke, "[s]he was hysterical. Her mouth was bleeding. It was a very cold day. She had light stockings on like nylon stocking. From what I can remember, a light robe hollering, help me. Help me. He's going to kill me." J.App. at 199. When Tannous was asked by defense counsel to expound on Burke's hysterical state and to show the jury what she meant she said, "[c]oming out of the house with her hands up like this. Her mouth is bleeding. She had like--blood all over her mouth, saying help me help. He--he's going to kill me. He's going to kill me, very hysterical. I mean she was attacked, you know." J.App. at 200. Burke's videotape testimony was also presented and she described in detail the nature of the crime. Officers Teolis and Mulvihill then testified to Burke's condition as looking battered, visibly shaken and noted that she was bleeding from her mouth.
 
 
 10
 In addition, another officer who responded to the scene, Alfred Coleman, also testified as to Burke's mental and physical state describing details similar to those elicited from the previous witnesses. Coleman's remaining testimony focused on his job of investigating the premises. He also testified to a boot print found on Burke's front porch and that a photograph of the boot print was taken. Coleman did not testify regarding the arrest of Walker or any subsequent identification. During closing statements, counsel for defendants again referenced Walker's criminal behavior noting that "He breaks into homes, he threatens old women[.] elderly ladies." J.App. at 415.
 
 
 11
 Defendants argue that the limited use of the circumstances relating to and surrounding Walker's underlying arrest was proper to allow the jury to determine the reasonableness of defendants' conduct, defendants' state of mind, for impeachment purposes, and to establish the credibility of the defendants.
 
 
 12
 In an excessive use of force claim, the criterion by which the accused officer's conduct is measured is a "reasonableness" standard. Graham v. Connor, 490 U.S. 386, 388 (1989). An officer's underlying intent and motivation are not relevant considerations in making this objective assessment thus, "[a]n officer's evil intentions will not make a Fourth Amendment violation out of an objectively reasonable use of force; nor will an officer's good intentions make an objectively unreasonable use of force constitutional." Id. at 397. The inquiry under this test, however, may include an examination of the "facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." Id. at 396; Patrick v. City of Detroit, 906 F.2d 1108, 1115 (6th Cir.1990). In other words it is permissible to consider such fact-specific evidence in determining whether, given the totality of the circumstances, the officer's conduct was objectively reasonable. However, such evidence is not admissible for the purposes of ascertaining the officer's subjective state of mind.
 
 
 13
 As applied to the case sub judice, repeated references to details of the crime, while minimally relevant, were in this Court's opinion, of a cumulative nature which only served to inflame the jury and were clearly prejudicial to the plaintiff's case. In Wilson v. City of Chicago, 6 F.3d 1233 (7th Cir.1993), cert. denied, 114 S.Ct. 1844 (1994), the plaintiff contested the trial court's admission of evidence regarding the details surrounding the murders of two officers, for which the plaintiff was subsequently convicted. The evidence at trial included a description by defense counsel as to how one of the police officers was killed by the plaintiff. The appellate court found this evidence had no relevant bearing upon appellant's claim that he had been tortured during interrogation nor could they find any relevance between the crimes and the injuries allegedly resulting from the torture. Earlier in Geitz v. Lindsay, 893 F.2d 148, 151 (7th Cir.1990), the Seventh Circuit found that the limited use of details regarding the alleged crimes were of a general nature and sufficient to "fairly and adequately protect[ ] the plaintiff from unfair prejudice." The plaintiff in Geitz was shot during an unsuccessful attempt to escape police custody and brought a claim alleging excessive force under § 1983. On appeal, plaintiff argued that the district court erred in admitting evidence which included the names and ages of his victims, the physical evidence allegedly used in the commission of the crimes, the location of the crime scenes and the means by which the plaintiff gained entry to the crime scenes. However, the specific details of the crimes were not admitted at trial.
 
 
 14
 Unlike the situation in Geitz, Walker's civil trial was replete with the details of the crime as every witness, except for the plaintiff and including the victim, testified in graphic detail regarding Burke's condition and her account of the robbery. While such information was arguably necessary to determine whether the officers' conduct was objectively reasonable, the amount and detail of evidence admitted was clearly inflammatory and prejudicial to Walker's civil action.
 
 
 15
 The use of this evidence to impeach Walker's credibility or establish the officers' credibility is likewise unavailing. Walker admitted his actions towards Burke and acknowledged that he threatened her. He did not deny his conviction for this crime or that he was, at the time of trial, incarcerated for the offense. In other words, plaintiff did not challenge or deny his actions in robbing Burke. The officers' credibility in their testimony regarding Walker's attempt to resist arrest could have been effected through the limited use of the details regarding the crime. Instead, Walker's criminal action was essentially re-tried to a civil panel when the defendants were allowed to "harp on the [plaintiff's] crime, parade it lovingly before the jury in all its gruesome details, and thereby shift the focus of attention from the events at issue ... to the [plaintiff's] conviction in a prior case." Hernandez v. Cepeda, 860 F.2d 260, 264 (7th Cir.1988) (quoting Campbell v. Greer, 831 F.2d 700, 707 (7th Cir.1987)). While Walker did not object to the references made during opening and closing statements, we may consider whether it was plain error, an error that was so obvious and prejudicial that a failure to correct it would result in a manifest miscarriage of justice. See, Holmes v. City of Massillon, Ohio, 78 F.3d 1041, 1049 n. 6 (6th Cir.1996).
 
 
 16
 Given the cumulative nature of the testimony and continued references to the underlying crime made during the course of the trial, we find that the district court committed plain error, and we reverse and remand for a new trial.
 
 IV.
 
 17
 We now turn to Walker's contention that the district court erred in refusing to allow the admission of interrogatory answers at trial for impeachment purposes. Walker contends that the District Court erred because Mulvihill's testimony was contrary to the answers contained in the interrogatories and should have been admitted as an admission under Fed.R.Evid. 801(d)(2).
 
 
 18
 Answers to interrogatories "are to be signed by the person making them, and the objections signed by the attorney making them." Fed.R.Civ.P. 33(b)(2). In response to an interrogatory propounded by the plaintiff, Defendant Mulvihill's interrogatory answer to the sequence of events surrounding his encounter with the plaintiff was submitted in pertinent part:
 
 
 19
 Writer removed weapon from my holster, pointed it at the perpetrator and ordered perpetrator to lie down on the ground and place his hands on his head. The perpetrator refused to comply with the writers [sic] order. Writer ordered the perpetrator at least two times to lie down and place his hands on his head. The perpetrator also refused these and turned, walked to the garage in the yard to the open door, placed his hands in his pockets and removed a red change purse and other items and dropped them into the garage. The perpetrator then raised his hands as if to surrender.
 
 J.App. at 51 (emphasis added.)
 
 20
 Mulvihill's testimony at trial indicated that he did not remember Walker taking both of his hands and going through his jacket pockets. J.App. at 384. However, the district court did not allow Walker to utilize the answers to the interrogatories as an admission because Mulvihill stated he had not read the answers as prepared by his counsel before signing them. The district court also denied Walker's attempt to impeach Mulvihill through the use of the answer to the interrogatory because it felt that Mulvihill's testimony did not necessarily contradict his interrogatory answers.
 
 
 21
 The Federal Rules of Evidence define the admission of a party as a statement offered against a party which is his own statement in either an individual or a representative capacity. Fed.R.Evid. 801(d)(2). It is undisputed that Mulvihill's attorney prepared the answers to the interrogatories and that Mulvihill signed them without reading them. We think that Mulvihill's mistake in not reading the interrogatories before signing the affidavit was carelessness on the part of his attorney. However, this Circuit has clearly held that answers to interrogatories may be utilized as admissions. Freed v. Erie Lackawanna Ry. Co., 445 F.2d 619, 621 (6th Cir.1971), cert. denied, 404 U.S. 1017 (1972). Such answers, while proper as admissions, are not necessarily binding. Id. Where there is a conflict between the trial testimony and the answers in response to interrogatories, the fact finder is the proper body to resolve the conflict. See, Bell v. A-Leet Leasing Corp., 863 F.2d 257, 259 (2d Cir.1988).
 
 
 22
 As applied to this case, the district court erred in not admitting the interrogatory answers; however, because Mulvihill testified as to his recollection regarding the placement of Walker's hands, we find that the error was not prejudicial to plaintiff. Because the error did not affect the substantial rights of Walker, we find that the error was harmless.
 
 V.
 
 23
 Accordingly, we AFFIRM in part and VACATE in part the district court's judgment and REMAND this case for a new trial.
 
 
 24
 RYAN, Circuit Judge, concurring.
 
 
 25
 I agree that the defendant is entitled to a new trial. I write separately, however, because I find certain aspects of the majority's analysis confusing and contrary to Sixth Circuit precedent. Because this case is being remanded for a new trial, it is important, in my judgment, to clarify for the district court what rules ought to govern the proceedings upon remand.
 
 I.
 
 26
 The extensive details of Walker's assault upon Ms. Burke and the description of her appearance following the assault are immaterial and should not have been received in evidence. The question for the jury in an excessive force case is whether the amount of force used was reasonable, objectively assessed from the perspective of a "reasonable" officer. See Graham v. Connor, 490 U.S. 386 (1989); see also, Patrick v. City of Detroit, 906 F.2d 1108, 1115 (6th Cir.1990). This is a fact-specific inquiry that does not include the accused officer's state of mind. State of mind evidence simply "has no relevance in the constitutional excessive force inquiry." Lewis v. City of Irvine, 899 F.2d 451, 457 (6th Cir.1990). Because Graham's objective reasonableness standard precludes an inquiry into the arresting officer's underlying intent or motivation, the majority's statement that the details of Walker's crime were "minimally relevant" is mistaken and, in my judgment, contrary to Lewis; the evidence should not have been admitted. Lewis, 899 F.2d at 456.
 
 
 27
 The details of the crime are also inadmissible to "impeach" Walker's credibility, and they are not material to determining whether Walker was attempting to resist arrest. What happened prior to the officers arriving at the scene, or the neighbor's reaction to Burke's "condition," or the answers given to Officer Coleman when he was interviewing the victim simply do not shed light on the issue whether the force used in apprehending Walker was "objectively reasonable." There was no reason to introduce the details of Walker's crime other than to inflame the passions of the jury. Wilson v. City of Chicago, 6 F.3d 1233, 1236-37 (7th Cir.1993), cert. denied, 114 S.Ct. 1844 (1994); see also Wierstak v. Heffernan, 789 F.2d 968 (1st Cir.1986).
 
 
 28
 By introducing into evidence the emotionally charged details of the assault upon Ms. Burke and the description of her appearance thereafter, the defendants succeeded in focusing the jury's attention on the immaterial facts of the plaintiff's crime and away from the subject that was properly before the jury, which was the force used by the defendants in effecting the arrest. The defendants were, in effect, permitted to try Walker once again on the criminal charges. The details of the crime perpetrated against Ms. Burke were so cumulative and inflaming, in addition to being immaterial, as to contaminate the verdict to a degree that only a new trial will suffice to cure the substantial prejudice to Walker. On remand the district court should not permit the jury to consider the details of the assault upon Ms. Burke.
 
 II.
 
 29
 Although we do not need to reach the issue of the admissibility of the interrogatories since we are reversing on other grounds, I write separately on this issue as well because I believe the majority opinion may be misunderstood.
 
 
 30
 The interrogatory answer at issue in this case was plainly admissible as an admission. Fed.R.Evid. 801(d)(2)(A). That Mulvihill may not have read the interrogatories, and the answers to them as prepared by his attorney, is of no consequence; he signed them and, having done so, he is charged with having made the answers his own. A party opponent's answers to interrogatories are admissible as admissions. Gridiron Steel Co. v. Jones & Laughlin Steel Corp., 361 F.2d 791, 794 (6th Cir.1966).
 
 
 31
 Although the district court erred in not admitting Mulvihill's interrogatory answers as admissions under 801(d)(2)(A), the court did not err in excluding the answers for impeachment purposes only. The answer would have been admissible for impeachment only, if it were a prior statement inconsistent with Mulvihill's testimony at trial. The court found that it was not inconsistent with Mulvihill's trial testimony and the court was correct. At trial, Mulvihill testified that he did not remember Walker placing both hands in his pockets, an absence of memory at trial, assuming it is authentic, is not inconsistent with a statement made earlier describing the details of what at trial is forgotten. Therefore, Mulvihill's interrogatory answer was not inconsistent with his lack of memory at trial, and the district court's ruling rejecting the prior statement for impeachment purposes only was not error.
 
 III.
 
 32
 I agree that the judgment of the district court must be reversed.
 
 
 
 *
 The Honorable David A. Katz, United States District Judge for the Northern District of Ohio, sitting by designation