**Phyllis MOSLEY, Plaintiff–Appellee,**

v.

**Roland HAIRSTON, Director, Ohio Department of Human Services, Defendant–Appellant,**

**Donald Thomas, Director, Hamilton County Department of Human Services, et al., Defendants,**

**Louis W. Sullivan, M.D., Secretary, United States Department of Health and Human Services, Defendant–Appellant.**

Nos. 89–3473, 89–3475.

United States Court of Appeals, Sixth Circuit.

Argued Sept. 25, 1990.

Decided Dec. 4, 1990.

Rehearing Denied Jan. 9, 1991.

Ross C. Owens, III, Stephen H. Olden (argued), Legal Aid Society of Cincinnati, Cincinnati, Ohio, for Phyllis Mosley, on behalf of herself & all others similarly situated, plaintiff-appellee.

Alan Schwepe, Karen L. Lazorishak (argued), Office of the Atty. Gen. of Ohio, Columbus, Ohio, for Patricia Barry, Director, Ohio Dept. of Human Services, defendant.

Thomas E. Deye, Hamilton County Prosecutor's Office, Cincinnati, Ohio, for Don-

ald Thomas, Director, Hamilton County Dept. of Human Services, defendant.

Ted Yasuda, Dept. of Health and Human Services, Office of the General Counsel, Region V, Chicago, Ill., Elizabeth Baringhaus Mattingly, Office of the U.S. Atty., Cincinnati, Ohio, Katherine S. Gruenheck (argued), William Kanter, U.S. Dept. of Justice, Civ. Div., Appellate Staff, Washington, D.C., for Louis W. Sullivan, M.D., Secretary, U.S. Dept. of Health and Human Services, defendant-appellant.

Before KEITH and GUY, Circuit Judges, and LIVELY, Senior Circuit Judge.

LIVELY, Senior Circuit Judge.

These consolidated appeals present two issues related to the liability of federal and state officials for the payment of "passthrough" or "disregard" payments under the Aid to Families with Dependant Children (AFDC) program.

## I.

The AFDC program is a joint federal-state undertaking. It is contained in Title IV–A of the Social Security Act, 42 U.S.C. § 601 et seq. Title IV–D of the Act, 42 U.S.C. § 651 et seq., contains the Child Support Enforcement Program, which is designed to promote the fiscal responsibility of absent parents of AFDC dependents. Under this program, added as part of the Deficit Reduction Act of 1984, AFDC applicants and recipients must assign to the state all rights to support that the applicant or recipient may have from any other person. As an incentive to encourage cooperation with the program, the statute in effect during the period encompassing the plaintiff's claim provided that the first $50 of each monthly support payment "collected periodically" be paid to the benefit-receiving family "without affecting its eligibility for assistance or decreasing any amount otherwise payable as assistance to such family during such month." 42 U.S.C. § 657(b)(1) (1988). In addition, 42 U.S.C. § 602(a)(8)(A)(vi) directed state agencies to disregard such payments in determining need. Thus, the first $50 was "passed through" by the collecting state to the recipient, and was "disregarded" in determining the family's entitlement to benefits and in calculating the amount of benefits payable for that month.

The Ohio Department of Human Services has delegated responsibility for the enforcement program to the county agency. Pursuant to parallel regulations of the Secretary of the U.S. Department of Health and Human Services and the State of Ohio, passthrough payments were limited to $50 for the month in which they were received by a county agency. See C.F.R. § 302.51(b)(1) (1984) and Ohio Administrative Code § 5101:1–23–221(A) (1987). The federal regulation provided that:

> [i]f the amount collected includes payment on the required support obligation for a previous month or months, the family shall only receive the first $50 of the amount which represents the required support obligation for the month in which the support was collected.... No payment shall be made to a family under this paragraph for a month in which there is no support collection.

The date of collection was defined as "the date on which the payment is received by the IV–D agency." 45 C.F.R. § 302.51(a). Thus, if a support-obligor made a timely payment to the county agency but that agency did not receive the payment in the month when it was due to the support-obligee because of delays in transmittal, the payment was treated as untimely and no money was passed through to the AFDC recipient.

## II.

### A.

The plaintiff, Phyllis Mosley, is the mother of five minor children who live with her, and is a participant in the AFDC program. Her former husband, Sonny Hibbard, is the father of two of her five children. Following their divorce Hibbard was ordered by the court to pay $130 per month for support of his two children. This obligation is met by Hibbard's employer deducting the court-ordered amount from Hibbard's

wages each month. Under applicable regulations the employer is required to remit the deducted wages to the child support enforcement agency of Hamilton County, Ohio within 10 days of the deduction.

Although Hibbard's employer has made periodic deductions, it did not always remit the withheld wages to the county agency during the month of the deduction. In some months the full amount deducted was remitted, but in other months only partial amounts were remitted, and for seven months the employer remitted nothing. By September 1986 Hibbard's support account with the county agency was $770 in arrears. Payments through May 1988 were never sufficient in any given month to make Hibbard's account current or paid in advance.

During five months in the period between September 1986 and March 1988 no money was paid by the employer. Although in later months the employer made some payments that were larger than the required $130, all the excess payments were applied to the arrearage, and the plaintiff received no passthrough payments for those five months.

Based on the federal and state regulations at issue, when a support account was in arrears as it was in this case, the AFDC recipient would receive a maximum of $50 of the amount collected as a passthrough payment. The amounts collected in excess of $50 were applied to any remaining current support order and then to any arrearage. With respect to the five months in which Hibbard's employer made no payments, the plaintiff received no passthrough payments even though the employer remitted more than the required $130 in some later months.

### B.

Ms. Mosley filed her second amended complaint in this action on May 20, 1988. She named as defendants the Director of the Ohio Department of Human Services, the director of the county agency and the members of the county commission, and the Secretary of the U.S. Department of Health and Human Services. She alleged that the defendants failed to pass through more than $50 in any month even though they received more than that amount from Hibbard's employer and a portion of the remitted amount in some months had been deducted in an earlier month. Thus, when a support payment was deducted by the employer in a given month, unless the defendants received the payment in that month, they treated it as an untimely payment and did not pass it through to the plaintiff.

Ms. Mosley's complaint charged that the regulations and the procedures followed in reliance upon them were inconsistent with, and violated the Social Security Act. She contended that she was entitled to have received a $50 passthrough payment for each month in which there was a deduction regardless of when the agency received payment from Hibbard's employer. She also asserted that the Act did not authorize the provision of the regulations that no passthrough payment should be made for a month in which there is no support collection. Rather, she maintained, later excess payments should have been applied first to make passthrough payments to the family before being used to reduce the arrearage.

The complaint sought a declaratory judgment that the regulations were invalid, an injunction prohibiting the continued application of the regulations, and an order directing the defendants to make passthrough payments of $50 for each of the five months referred to. The complaint also requested that a class action be certified and that class members receive passthrough payments in accordance with the plaintiff's construction of the act.

### C.

The state and county defendants filed motions to dismiss for lack of subject matter jurisdiction and for failure to state a claim. In an accompanying memorandum the state defendants argued that the Eleventh Amendment prohibited the action against them. The Secretary filed an answer denying that there had been any deprivation or violation of federal rights. The

state defendants also filed an answer in which they pled the Eleventh Amendment as an affirmative defense.

The Secretary made a motion to file as an exhibit the text and a portion of the legislative history of the "Family Support Act of 1988," Pub.L. No. 100–485, 102 Stat. 2343 (1988). Section 102 of the 1988 Act amended 42 U.S.C. §§ 602(a)(8)(A)(vi) and 657(b)(1) with respect to passthrough payments. Before the amendment, § 602(a)(8)(A)(vi) provided for passthrough payment of "any child support payments received in such month." This language was stricken by the amendment and § 602(a)(8)(A)(vi) now provides for passthrough "of any child support payments for such month received in that month, and the first $50 of child support payments for each prior month received in that month if such payments were made by the absent parent in the month when due." Section 657(b)(1) was similarly amended. The Conference Report to the 1988 Act states that the amendment "clarifies that the $50 disregard applies to a payment received in a month which was due for a prior month if it was made by the absent parent in the month when due." H.R. Conference Rep. No. 100–998, 100th Congress, 2d Sess. 91, *reprinted in* 1988 U.S.Code Cong. & Admin.News 2776, 2879, 2886.

## III.

### A.

After a hearing on the parties' cross motions for summary judgment, the district court granted the plaintiff's motion 703 F.Supp. 1288 (1989). The court found that there was no dispute as to material facts and that the plaintiff was entitled to judgment as a matter of law. The court found that the federal regulations defined the date of collection as the date the payment is received by the Title IV–D agency (in this case, the Hamilton County Department of Human Services) and concluded that this regulation was inconsistent with the provisions and purpose of the statute that created the enforcement program. Relying on several district court cases dealing with claims similar to those of Ms.

Mosley, the court concluded that the Eleventh Amendment does not bar this action. The court stated that the support payments could not be properly characterized as state funds. Finding no ambiguity in the statute, the court rejected both the federal and state regulations as inconsistent with Title IV of the Social Security Act.

The court entered an order declaring both federal and state regulations invalid "insofar as they preclude a passthrough payment for an amount that represents a monthly child support obligation when such amount is withheld from the support obligor's wages by his employer in the month when due but is not received by the collecting agency in the same month." The order also enjoined the defendants from denying plaintiff a passthrough payment under these circumstances. Finally, it ordered "defendants ... to pass through to the plaintiff $50 for each of the five months in question." As written, the order directing payment for past months applied to all defendants.

### B.

The defendants filed motions to reconsider and to alter or amend the judgment. They argued that the controversy was rendered moot by the enactment of the Family Support Act of 1988; that no further violations of the former version of the statute could occur. The Secretary filed as an exhibit an "Action Transmittal" dated November 18, 1988. This document advised state agencies administering the Child Support Enforcement Program of the enactment of the Family Support Act of 1988, effective January 1, 1989.

The transmittal notified the state agencies that the 1988 act required that "the first $50 received in a month which was due for a prior month must be paid to the family if the payment was made by the absent parent in the month when due." The transmittal explicitly stated that "[u]nder the new law, the AFDC family may not be denied the $50 disregard payment when the absent parent pays support on-time but there is a delay in transmitting

the payment from the point of collection to the agency responsible for distribution." Finally, the transmittal advised the state agencies that proposed regulations implementing the statutory changes were being prepared for public comment, and that the statute was effective on January 1, 1989. The district court denied all of the defendants' motions, along with the plaintiff's motion for class certification.

The court stated that there had been no showing of the effect of the Action Transmittal, and that the Secretary had not amended the regulations that the court had declared invalid one month earlier. The district court refused to declare the case moot on the basis of the Action Transmittal "which adopts a different interpretation of the Social Security Act than do the codified regulations in issue."

The state and federal defendants filed separate notices of appeal and the appeals were consolidated for argument. The county defendants did not appeal and the plaintiff did not appeal the denial of her motion for class action certification.

### IV.

#### A.

The district court's judgment declared the federal and state regulations invalid and enjoined the defendants from denying the five passthrough payments sought by the plaintiff. The defendants argue that intervening events have rendered issues related to the regulations moot.

■ The issue of mootness implicates the court's subject matter jurisdiction inasmuch as federal courts are limited by Art. III of the Constitution to deciding cases and controversies. This requirement refers to "live" controversies, those that persist in "definite and concrete" form even after intervening events have made some changes in the parties' circumstances. See *DeFunis v. Odegaard*, 416 U.S. 312, 317, 94 S.Ct. 1704, 1706, 40 L.Ed.2d 164 (1974). Furthermore, for this court to have jurisdiction, an actual controversy must exist at the appellate stage; it is not sufficient that a controversy existed at the time suit was filed. *Id.* at 319, 94 S.Ct. at 1707.

■ We conclude that intervening events have rendered the issues covered by the district court's declaratory judgment and injunction moot. As we have noted, Congress enacted the Family Support Act of 1988, which changed the wording of 42 U.S.C. §§ 657(b)(1) and 602(a)(8)(A)(vi) to require the remittance of passthrough payments to AFDC families if the payment is made in the month when due regardless of whether it is received by the state or county agency within that month or sometime later. The legislative history supports the view that the purpose of the amendment was to avoid restrictions on the amounts paid to AFDC families under circumstances such as those experienced by Ms. Mosley. Furthermore, the Action Transmittal makes it clear that state agencies must pay out to AFDC families the first $50 of any support payment from an absent parent that is made in the month when due, regardless of when the agency receives the money.

The Secretary has now published a Notice of Proposed Rulemaking. 54 Fed.Reg. 37,866 (Sept. 13, 1989). In the notice the Secretary states that he has found it to be Congress's intent to make the date of withholding from wages the date of collection for distribution purposes. The Secretary has proposed a regulation which will provide that in wage-withholding cases an AFDC family will receive a passthrough payment if the support obligation has been irrevocably withheld from the absent parent's wages even if the payment is not forwarded to the state agency until a later month. The defendant Director of the Ohio Department of Human Services amended Ohio Admin.Code § 5101:1–23–221(D), effective March 1, 1989, to achieve exactly the same result. The proposed federal regulation and the current Ohio regulation address Ms. Mosley's complaint and establish procedures that accomplish the very result ordered by the district court's declaratory judgment and injunction.

### B.

The plaintiff argues that the case is not moot because there is a possibility of noncompliance in the future. She asserts that while the Family Support Act of 1988 clearly requires changes in the regulations concerning entitlement to passthrough payments, the statute is ambiguous in failing to define payments "made ... in the month when due." Finally, Ms. Mosley contends that until new regulations are adopted and implemented, the defendants are bound by the ones existing when suit was filed, and may follow the old regulations.

As evidence of such noncompliance, Ms. Mosley filed an affidavit stating that Hibbard's employer withheld money from Hibbard's wages in December 1988 but did not remit this withholding to the county agency until January 1989, along with the January withholding. Ms. Mosley received only one $50 payment in January 1989. She argues that an injunction is necessary to prevent such noncompliance in the future. We disagree.

The Family Support Act was not law until January 1, 1989, and the Action Transmittal required state agencies to pass through such payments only after the effective date of the 1988 Act. Thus, the fact that a December 1988 deduction received by the agency in January 1989 was not passed through proves nothing about the likelihood of such noncompliance with respect to support payments withheld by an employer on or after January 1, 1989. In the absence of a class action, there must be a "reasonable expectation" or a "demonstrated probability" that the individual complainant will be involved in the same controversy in the future in order to avoid a finding of mootness when intervening events have provided the relief sought by the plaintiff. *Murphy v. Hunt*, 455 U.S. 478, 482, 102 S.Ct. 1181, 1183, 71 L.Ed.2d 353 (1982). Although voluntary cessation of wrongful conduct does not automatically render a case moot, "[t]he case may nevertheless be moot if the defendant can demonstrate that 'there is no reasonable expectation that the wrong will be repeated.'" *United States v. W.T. Grant Co.*, 345 U.S. 629, 633, 73 S.Ct. 894, 897, 97 L.Ed. 1303 (1953), quoting *United States v. Aluminum Co. of America*, 148 F.2d 416, 448 (2d Cir.1945).

We find no ambiguity in the 1988 Act and no such reasonable expectation or probability in this case. Even if the case was not moot at the time of the district court's decision, the actions of the state and federal defendants since that time have demonstrated that there is no reasonable likelihood "that the wrong will be repeated." *Id.* The party claiming mootness has a "heavy burden," *Id.* 345 U.S. at 633, 73 S.Ct. at 897, but we conclude that the defendants have carried their burden in this case. Moreover, there appears to be a difference in the way voluntary cessation of illegal activities is treated when the offending parties are government officials rather than private parties:

> We note additionally that cessation of the allegedly illegal conduct by government officials has been treated with more solicitude by the courts than similar action by private parties. According to one commentator, such self-correction provides a secure foundation for a dismissal based on mootness so long as it appears genuine. *See* 13A Wright, Miller & Cooper *Federal Practice and Procedure* § 3533.7, at 353 (2d ed. 1984).

*Ragsdale v. Turnock*, 841 F.2d 1358, 1365 (7th Cir.1988). There is no reasonable basis for assuming that the state and federal defendants in this case will fail to comply with the requirements of the Family Support Act or fail to follow the regulations now proposed and adopted. The claims for declaratory and injunctive relief are moot, and upon remand, must be dismissed.

### V.

The finding of mootness has a direct bearing on our determination of the Eleventh Amendment issue.

### A.

The state defendants argue that the district court's decree violates the Eleventh Amendment to the extent that it orders "defendants" to pass through to the plain-

tiff fifty dollars for each of the five past months in which she received no such payments. We agree.

The Eleventh Amendment provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." Despite the clear reference to "citizens of another state," it has long been settled that the amendment also bars suits against a state by one of its own citizens. *Hans v. Louisiana,* 134 U.S. 1, 10 S.Ct. 504, 33 L.Ed. 842 (1890). Thus, unless covered by an exception, Ms. Mosley's suit falls within the proscription of the Eleventh Amendment.

Ms. Mosley did not sue the State of Ohio; she sued only individual state officials. In *Ex parte Young,* 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908), the Supreme Court held that a suit against a state official challenging that official's actions on constitutional grounds is not a suit against the state. *Ex parte Young* has been construed to permit a federal court to enjoin state officials to conform their conduct to the requirements of federal law, even when the required actions produce "a direct and substantial impact on the state treasury." *Milliken v. Bradley,* 433 U.S. 267, 289, 97 S.Ct. 2749, 2761, 53 L.Ed.2d 745 (1977).

In *Edelman v. Jordan,* 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974), the Supreme Court held that the portion of a decree requiring state officials to make retroactive benefit payments under a federal-state program of aid to aged, blind and other handicapped individuals violated the Eleventh Amendment. The Supreme Court affirmed the finding of the lower courts that the state failed to comply with federal law in administering the program. Thus, the court affirmed entry of a permanent injunction ordering the state officials to comply with federal requirements. The court stated, however, that while *Ex parte Young* did not bar this prospective injunction against state officials' violations of federal regulations, a suit for the payment

of an accrued monetary liability went beyond what *Ex parte Young* permits.

The Court in *Edelman* emphasizes that any money judgment for past derelictions would be paid out of the state treasury, not from personal funds of the defendants. The Court interpreted *Ford Motor Co. v. Department of Treasury,* 323 U.S. 459, 65 S.Ct. 347, 89 L.Ed. 389 (1945), and its progeny, as barring federal court suits "seeking to impose a liability which must be paid from public funds in the state treasury." 415 U.S. at 663, 94 S.Ct. at 1356. *Edelman* appears to have articulated a test consisting of two parts. An action by a private party against state officials is barred by the Eleventh amendment if it seeks to recover (1) retroactive monetary payments (2) that must necessarily be made from public funds in the state treasury.

In *Milliken v. Bradley,* supra, the court emphasized the fact that although the State of Michigan was required to make payments from public funds to programs that were " 'compensatory' in nature," they were "part of a plan that operates *prospectively.*" 433 U.S. at 290, 97 S.Ct. at 2762 (italics in original). The Court further refined the retroactive-public funds test in *Quern v. Jordan,* 440 U.S. 332, 99 S.Ct. 1139, 59 L.Ed.2d 358 (1979), a sequel to *Edelman.* In *Quern* the issue was whether the federal court could require state officials to send notices to members of the plaintiff class advising that there were state administrative procedures by which they could obtain a determination of their eligibility for past welfare benefits. The Supreme Court upheld the order even though, by following its suggestion, a plaintiff might succeed in recovering payments of past benefits from the state treasury.

In approving the notice order in *Quern* the Court emphasized that the district court had not ordered any payments from state funds; the decision to make such payments rested entirely with the state. And, citing *Milliken,* the Court concluded that the notice, as approved by the court of appeals, "is more properly viewed as ancillary to the prospective relief already or-

dered by the court." *Id.* at 349, 99 S.Ct. at 1149.

In *Monsour v. Green,* 474 U.S. 64, 106 S.Ct. 423, 88 L.Ed.2d 371 (1985), the Supreme Court reviewed *Edelman, Milliken* and *Quern,* as well as earlier Eleventh Amendment cases. *Monsour* was a class action challenging the Director of the Michigan Department of Social Services' calculations of AFDC benefits. Before the district court decided the issue, Congress amended the controlling statutes and Michigan then used calculations that conformed to the amended federal law. The plaintiffs pressed on, however, and sought a remedial order requiring "notice relief" as in *Quern* and a declaration that the defendant's prior conduct had violated federal law. The district court granted a motion to dismiss, holding that the change in the law rendered the plaintiffs' claims for prospective relief moot and that the Eleventh Amendment barred declaratory and notice relief related solely to past violations of federal law.

The Supreme Court agreed that both forms of relief were forbidden by the Eleventh Amendment. The Court distinguished *Milliken* and *Quern.* In both of these cases there was in place a valid prospective injunction requiring state officials to conform their future conduct to federal law. The order to pay part of some educational components in *Milliken* and the order to issue notices in *Quern* were ancillary to prospective relief. In *Monsour,* on the other hand, there was no continuing violation in view of the amendment to the statutes, and therefore no prospective injunction was in place. Thus, the requested notice would not have been ancillary to any valid existing remedial order, and the Eleventh Amendment prevented the federal court from ordering it "as an independent form of relief." *Id.* at 71, 106 S.Ct. at 427. The request for a declaratory judgment was properly denied as well, because to grant it would result in a "partial 'end run'" around *Edelman. Id.* at 73, 106 S.Ct. at 428.

## B.

All passthrough payments undeniably are made from the state treasury. Ms. Mosley argues, however, that passthrough payments are not made from public funds. Instead, she contends, the first $50 of each monthly support payment is her money, and the state merely acts as a conduit. The argument overlooks the effect of her assignment of all support from her former husband to the state as a condition for participating in the AFDC program. 42 U.S.C. § 602(a)(26). The required assignment is unconditional. When remitted by the employer the support payments become state funds. The passthrough payments are made by warrants drawn on the state treasury and payable from the general funds of the state. We believe passthrough payments are made from public funds.

## C.

We conclude that *Monsour* requires reversal of that portion of the district court's order directing the state defendant to pay Ms. Mosley $50 for each of five months in the past. Such an order to a state official requiring retrospective payments from the state treasury can survive an Eleventh Amendment challenge only if that relief is ancillary to other ongoing, prospective relief. Our conclusion that mootness requires that the injunction be vacated and the claim for declaratory and injunctive relief be dismissed deprives the claim for past benefits of any jurisdictional basis.

## CONCLUSION

Intervening events have rendered the claims for declaratory judgment and injunction moot. Those portions of the district court judgment granting such relief are vacated and remanded.

The court order directs the "defendants" to pay Ms. Mosley for the five months. The county defendants, who are not immunized by the Eleventh Amendment, have not appealed. The Eleventh Amendment prohibits the claim against the state defendants for past support payments under the

facts of this case. Accordingly, that portion of the district court judgment directing the state defendant to pay $250 to the plaintiff for past months' passthrough payments is reversed.

Upon remand the district court will dismiss the entire action with prejudice. No costs are allowed on appeal; all parties will pay their own costs.