RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 17a0252p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

TARA NIKOLAO,

        *Plaintiff-Appellant,*

    *v.*

No. 17-1367

NICK LYON, individually and in his official capacity as Director of the Michigan Department of Health and Human Services; WAYNE COUNTY DEPARTMENT OF HEALTH, VETERANS, AND COMMUNITY WELLNESS, DR. MOUHANAD HAMMAMI, individually and in his official capacity as Director of the Wayne County Department of Health, Veterans, and Community Wellness, and CAROL AUSTERBERRY, individually and in her official capacity as Division Director and Deputy Health Officer of the Wayne County Department of Health, Veterans, and Community Wellness.

        *Defendants-Appellees.*

---

Appeal from the United States District Court
for the Eastern District of Michigan at Flint.
No. 4:16-cv-12545—Linda V. Parker, District Judge.

Argued: October 12, 2017

Decided and Filed: November 7, 2017

Before: SUHRHEINRICH, GRIFFIN, and KETHLEDGE, Circuit Judges.

---

## COUNSEL

**ARGUED:** Kate Oliveri, THOMAS MORE LAW CENTER, Ann Arbor, Michigan, for Appellant. Darrin F. Fowler, OFFICE OF THE MICHIGAN ATTORNEY GENERAL, Lansing, Michigan, for Appellee Nick Lyon. Davidde A. Stella, WAYNE COUNTY CORPORATION COUNSEL, Detroit, Michigan, for Appellees Wayne County, Hammami, and Austerberry. **ON**

**BRIEF:** Kate Oliveri, Brandon Bolling, THOMAS MORE LAW CENTER, Ann Arbor, Michigan, for Appellant. Darrin F. Fowler, Mark A. Gabrielse, OFFICE OF THE MICHIGAN ATTORNEY GENERAL, Lansing, Michigan, for Appellee Nick Lyon. Davidde A. Stella, WAYNE COUNTY CORPORATION COUNSEL, Detroit, Michigan, for Appellees Wayne County, Hammami, and Austerberry.

SUHRHEINRICH, J., delivered the opinion of the court in which GRIFFIN, J., joined, and KETHLEDGE, J., joined in the result. KETHLEDGE, J. (pg. 12), delivered a separate opinion concurring in the judgment.

---

**OPINION**

---

SUHRHEINRICH, Circuit Judge. The state of Michigan mandates that school-age children be vaccinated prior to entering the public school system. It also offers exemptions from this requirement for certain medical and nonmedical reasons. However, in order to get an exemption, a parent must first visit a local health department and explain the basis for his or her objection. A devout Catholic, Plaintiff-Appellant Tara Nikolao ("Nikolao") sought a vaccination waiver for her children for religious reasons. At the mandatory meeting, two Wayne County nurses tried to disabuse Nikolao of the notion that her Catholic faith prevented her from vaccinating her children, but Nikolao ultimately received the waiver. Nonetheless, she sued state and county officials for violations of the First Amendment's religion clauses. The district court granted Defendants' motion to dismiss. We affirm in part and vacate and remand in part.

**I. BACKGROUND**

The following facts are taken as true for purposes of Nikolao's appeal from the district court's dismissal under Rule 12(b)(6):

Michigan state law requires parents and guardians to vaccinate their children prior to entering public school. Mich. Comp. Laws § 333.9205. However, parents may seek exemptions from the mandatory vaccination law if they object "because of religious convictions or other objection to immunization." *Id.* § 333.9215(2). In December 2014, the Michigan Department of Health and Human Services ("MDHHS") passed a rule requiring parents asking for vaccination exemptions on behalf of their children to visit a county health office to discuss their objections

with a local health worker.  Mich. Admin. Code r. 325.176(12) ("Certification Rule").  The health worker must certify that the parent has "received education on the risks of not receiving the vaccines being waived and the benefits of vaccination to the individual and the community." *Id.*  Moreover, Michigan has published a series of "Waiver Notes" that contain responses to many common objections to vaccination.  Local health workers are instructed to use these Notes and to give them to objecting parents for review.  Waiver Notes are also available online to the general public.

In October 2015, Nikolao went to the Wayne County health department to get an exemption.  As a devout Catholic, Nikolao maintains that she cannot use vaccines "'which have moral problems,' such as those created from aborted fetal cells."  R. 1, ID# 36.  Further, she believes "the body is a temple and injecting it with chemicals that alter the person permanently violates the will of God."  R. 1, ID# 37.

Nikolao met with two Wayne County nurses, Jane Does 1 and 2.[1]  The nurses pressed Nikolao for more information.  At one point, Jane Doe 2 issued her an ultimatum, telling Nikolao that she must "declare what religion she practices, explain her religious beliefs, and engage in a back and forth discussion . . . concerning her religious objection."  R. 1, ID# 51.  She also told Nikolao that "there are no religions that have objections to vaccines."  R. 1, ID# 51 (emphasis omitted).  Finally, Nikolao was given the state's Religious Waiver Note—a document responding to common religious objections to vaccination—for review.  The Religious Waiver Note contained a quote falsely attributed to Pope Benedict XVI stating that parents who chose not to vaccinate their children "would be in 'more proximate cooperation with evil' than those who gave their children the vaccines in question because of the life saving nature of vaccines."  R. 1, ID# 28.  In reality, Monsignor Jacques Suaudeau, a doctor at the Pontifical Academy for Life, made these statements.  R. 1, ID# 30.

Nikolao did not yield to the nurses' pressure, and she was given her exemption.  However, on the form noting her compliance with the Certification Rule, the nurses wrote that

---

[1]Jane Does 1 and 2 have not been served in these proceedings and are thus not parties to this appeal.

Nikolao had objected because she wanted her "child to have natural immunity."  R. 11, Ex. 1. Nikolao wanted the form to report her religious objection specifically.

Nikolao filed this lawsuit against both state and county actors under 42 U.S.C. § 1983, challenging the treatment she received during the certification process.  She claimed that the state and county violated her First Amendment religious rights by forcing her to take time off from work, travel to and from the health department office, undergo the nurses' questioning, and by failing to properly memorialize her objection.  Nikolao also brought state law claims under the religious protections of the Michigan Constitution, *see* Mich. Const., Art. 1, § 4, as well as under Mich. Comp. Laws § 333.9215, which grants her the right to an exemption.

Nikolao named the following defendants: Nick Lyon ("Lyon"), Director of MDHHS; the Wayne County Department of Health ("WCDH"); Dr. Mouhanad Hammami, Director of WCDH; Carol Austerberry, Division Director and Deputy Health Officer of WCDH; and Jane Does 1 and 2.  She argued that these defendants violated her First Amendment religious rights and sought injunctive relief that would remove the certification requirement and the Religious Waiver Note.  Nikolao also sought nominal damages.

Lyon filed motions to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).  WCDH, Dr. Hammami, and Austerberry filed a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6).  The district court did not address Lyon's Rule 12(b)(1) motion, but granted Defendants' motions to dismiss under Rule 12(b)(6).  The district court then declined to exercise supplemental jurisdiction over the remaining state law claims.  We affirm in part and vacate and remand in part.

## II. ANALYSIS

### A. Standing

In the lower court proceedings, Lyon challenged Nikolao's standing to pursue her federal constitutional claims.  The district court did not consider those arguments, and instead dismissed the case on the merits.  Nonetheless, "we are under an independent obligation to examine [our] own jurisdiction."  *Hamdi ex rel. Hamdi v. Napolitano*, 620 F.3d 615, 620 (6th Cir. 2010)

(quoting *Baird v. Norton*, 266 F.3d 408, 410 (6th Cir. 2001)); *see also Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 95 (1998) ("'[E]very federal appellate court has a special obligation to 'satisfy itself not only of its own jurisdiction, but also that of the lower courts in a cause under review.'") (quoting *Mitchell v. Maurer*, 293 U.S. 237, 244 (1934)). "The requirement that jurisdiction be established as a threshold matter 'spring[s] from the nature and limits of the judicial power of the United States' and is 'inflexible and without exception.'" *Steel Co.*, 523 U.S. at 94-95 (quoting *Mansfield, C. & L.M. Ry. Co. v. Swan*, 111 U.S. 379, 382 (1884)). As such, we address Nikolao's standing to pursue these claims as a threshold matter.

A federal court may only adjudicate "cases" and "controversies." U.S. Const. art. III, § 2, cl. 1. The standing doctrine is derived from the case or controversy requirement and obligates plaintiffs to show a "personal stake in the outcome of the controversy as to . . . justify [the] exercise of the court's remedial powers on [their] behalf." *Town of Chester, N.Y. v. Laroe Estates, Inc.*, 137 S. Ct. 1645, 1650 (2017) (quoting *Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 38 (1976)). To establish standing, a litigant must show: (i) that she has suffered an "injury in fact"; (ii) that her injury was caused by the defendant's conduct; and (iii) that it is likely that the injury will be redressed by a favorable court decision. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992). Nikolao must "demonstrate standing for each claim [s]he seeks to press." *Town of Chester*, 137 S. Ct. at 1650 (quoting *Davis v. Fed. Election Comm'n*, 554 U.S. 724, 734 (2008)).

## 1. Free Exercise Clause Claim

The First Amendment states that "Congress shall make no law . . . prohibiting the free exercise [of religion]." U.S. Const., amend. I. The Sixth Circuit has held that the Free Exercise Clause is "predicated on coercion." *Mozert v. Hawkins Cty. Bd. of Educ.*, 827 F.2d 1058, 1066 (6th Cir. 1987) (quoting *Abington Sch. Dist. v. Schempp*, 374 U.S. 203, 223 (1963)). As such, a litigant suffers an injury to her free exercise rights when the state compels her "to do or refrain from doing an act forbidden or required by one's religion, or to affirm or disavow a belief forbidden or required by one's religion." *Id.* Nikolao has not suffered this type of injury here.

While Nikolao has presented facts suggesting that she was exposed to religious information with which she did not agree, she has given no indication that the information *coerced* her into doing or not doing anything. Nikolao went to the WCDH to receive a vaccination exemption and left with one. Thus, it is clear that the state's religious information did not coerce her into changing her religious beliefs in order to obtain the waiver.

Moreover, she has not been denied any legal right on the basis of her religion. Constitutionally, Nikolao has no right to an exemption. *See Jacobson v. Massachusetts*, 197 U.S. 11, 38 (1905) (holding that compulsory vaccination laws with only medical exemptions do not violate any federal constitutional right). Statutorily, Michigan *has* provided her the right to an exemption. Mich. Comp. Laws § 333.9215(2). But, Michigan has not given her the right to describe the nature of her objections on her exemption form. The exemption may be granted "because of religious convictions or other objection to immunization." *Id.* In fact, this provision makes no mention as to where or how, if at all, a parent's objections should be noted. Thus, the statutory right provided to Nikolao—the right to object to mandatory vaccinations and receive a waiver as a result—is precisely what she exercised here.

Having to take time off from work to travel to and from the local health office is not a sufficient injury for standing purposes either. This requirement does nothing to burden her practice of religion, nor does it discriminate against religion in any way, as all parents seeking nonmedical exemptions must go through the same process. This includes parents with entirely non-religious objections, such as those concerned about Autism.

In short, Nikolao has not presented any facts to suggest that the state has coerced her in her religious practices. As such, she has not suffered an injury-in-fact under the Free Exercise Clause and does not have standing to pursue that claim. The district court's decision as it relates to the Free Exercise Clause is vacated and we remand this case with instructions that Nikolao's free exercise claim be dismissed for lack of jurisdiction.

**2. Establishment Clause Claim**

Unlike the Free Exercise Clause, the Establishment Clause does not require Nikolao to show an element of coercion as part of the injury-in-fact requirement. Instead, "a plaintiff may

demonstrate an injury [under the Establishment Clause] by showing direct and unwelcome contact with a government-sponsored religious object." *ACLU of Ky. v. Grayson Cty.*, 591 F.3d 837, 843 (6th Cir. 2010).  Nikolao has pled facts sufficient to meet this requirement.

During her visit to the WCDH, Nikolao was given religious information both through the Religious Waiver Note and verbally by virtue of the nurses' questioning.  The Religious Waiver Note is a state-drafted document circulated to the county health departments to be used as it was here.  Nikolao did not welcome such contact; indeed, she actively attempted to avoid it by declining to discuss the specifics of her religious objections.  Nonetheless, she was presented with the religious information and the Waiver Note.  This alone is sufficient to satisfy the injury-in-fact requirement of the standing inquiry for her Establishment Clause challenge.  *See id.*

Moreover, there is no question that she can meet the causation and redressability prongs of the standing analysis here.  The state adopted the Certification Rule, which imposes the mandatory discussion with local health workers about which Nikolao complains.  The state also drafted and circulated the Religious Waiver Note—a direct cause of her stated injuries.  Further, she seeks injunctive relief eliminating the certification process as well as discontinuing the use of the Religious Waiver Note.  These two remedies—as well as nominal damages for the violations of her rights—would redress her injuries here.  For these reasons, Nikolao has standing to pursue her Establishment Clause Claim.

## B.  Merits of Establishment Clause Claim

Having concluded that Nikolao has standing to pursue her Establishment Clause claim, we now consider the merits of that claim.  The district court granted Defendants' Rule 12(b)(6) motion and dismissed her claim, holding that the Certification Rule has a secular purpose in protecting children from communicable diseases.  Further, the lower court reasoned that the Certification Rule does not inhibit religion because the information that Nikolao received did not disapprove of her religion or religion in general.

In order to withstand a Rule 12(b)(6) motion to dismiss, Nikolao's complaint "must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*,

550 U.S. 544, 570 (2007)).  While Nikolao need not plead "detailed factual allegations," she must provide more than a "formulaic recitation of the elements of a cause of action."  *Twombly*, 550 U.S. at 555.  Dismissal under Rule 12(b)(6) is appropriate if the facts alleged fail to state a claim under which relief can be granted.  *Iqbal*, 556 U.S. at 678.

To comply with the Establishment Clause, a state law or practice must meet the following conditions: (i) "the statute must have a secular legislative purpose"; (ii) the statute's "principal or primary effect must be one that neither advances nor inhibits religion"; and (iii) "the statute must not foster an excessive government entanglement with religion."  *Lemon v. Kurtzman*, 403 U.S. 602, 612-13 (1971) (citation omitted).  Where a state law fails under any one of these three prongs, it violates the Establishment Clause.  *See, e.g., Smith v. Jefferson Cty. Bd. of Sch. Comm'rs*, 788 F.3d 580, 586 (6th Cir. 2015).  Nikolao argues that the Certification Rule and the Religious Waiver Note violate each of these three prongs.

Specifically, she contends that the Certification Rule and the Religious Waiver Note are designed to "educate parents away from their religious beliefs with skewed, false, and misleading religious education."  She also argues that this process both inhibits religion and impermissibly entangles the state with religious operations.

### 1.  Certification Rule

Michigan's Certification Rule does not violate the Establishment Clause.  First, the purpose of the Certification Rule is plainly secular.  The Certification Rule is designed to protect the health and safety of public school children through extensive vaccinations.  Where a parent wishes not to vaccinate his or her child, Michigan educates that parent regarding the risks associated with that decision.  This is done in an effort to get parents to reconsider and, ultimately, to get more children vaccinated.  The endgame is widespread vaccination, which is necessary, indeed essential, to promote adequate immunity.

The importance of extensive vaccination should not be understated—the efficacy of vaccination relies on the theory of "herd immunity."  In essence, once a critical mass of the population is immune to a particular disease, the chance that unvaccinated individuals contract that disease drastically decreases.  *See* Dina Nathanson, *Herd Protection v. Vaccine Abstention:*

*Potential Conflict Between School Vaccine Requirements and State Religious Freedom Restoration Acts*, 42 Am. J.L. & Med. 621, 624 (2016). The critical mass needed to achieve herd immunity varies by disease, but is uniformly large. *Id.* ("[T]he following immunization thresholds are required: measles: 83-94[%]; mumps: 75-86%; rubella: 83-85%; diphtheria: 85%; polio: 80-86%; pertussis: 92-94%; and varicella: 90%."). Thus, to stop the outbreak of preventable diseases in public school, the significant majority of children entering the school system must be vaccinated. It is true that Michigan is trying to discourage parents from opting out of vaccination—but it is only doing so to protect children from serious and avoidable diseases. We are hard-pressed to envision a more secular purpose than this.[2]

Moreover, the educational requirement of the Certification Rule does nothing to promote or inhibit a particular religion or religion in general. The requirement itself is specifically limited to information concerning the benefits of vaccinations, rather than targeting or concerning itself with religion.

Finally, while the Certification Rule may require state employees to discuss religion with parents seeking religious exemptions, this does not entail "excessive government entanglement" with religion. Determining what amounts to excessive government entanglement requires an examination of the "character and purposes of the institutions that are benefited, the nature of the aid that the State provides, and the resulting relationship between the government and the religious authority." *Lemon*, 403 U.S. at 615. In this case, state officials are not inserted into the religious institution's operations. The Certification Rule only requires local health workers to have a conversation with objecting parents about the benefits of vaccinating children and the potential dangers in declining to do so. As part of that conversation, the state may offer its own take on a parent's objections. But the Certification Rule does not allow state officials to withhold an exemption based on the legitimacy of those objections. Were that the case, the

---

[2]Aside from educating parents on the importance of vaccinations, the Certification Rule serves the simple but crucial role of making it more difficult to opt out of getting vaccinated. Whereas the previous exemption rule merely required parents to fill out and mail a form noting their objection, this new requirement imposes additional obstacles. Considering the burden of getting certain vaccinations—Hepatitis B, for example, requires three or four shots over a six-month period—the state has a legitimate interest in trying to tip these scales. For a discussion on the importance of imposing hurdles to getting vaccination exemptions, see PBS, *Vermont's Rules on Vaccines for School Met with Parents' Support and Pushback* Sept. 26, 2017), http://www.pbs.org/newshour/bb/vermonts-rules-vaccines-school-met-parents-support-pushback/.

outcome here may very well be different. *Cf.* *Sherr v. Northport-E. Northport Union Free Sch. Dist.*, 672 F. Supp. 81, 91-92 (E.D.N.Y. 1987) (finding excessive entanglement where New York vaccination law required state officials to determine which religious organizations were "recognized"). However, that is not the case before us. Here, the state is merely voicing its own opinion on religious objections in an effort prevent the outbreak of communicable diseases. This does not rise to the level of excessive entanglement needed to sustain an Establishment Clause challenge.

**2. Religious Waiver Note**

Similarly, the Religious Waiver Note does not violate the Establishment Clause. The Note outlines a health department worker's available responses to religious objections concerning vaccination. To be sure, this document contains information about specific religions, as well as the disputed Pope Benedict XVI quote. But, again, the purpose of providing this information is secular. Michigan is attempting to promote health and safety among school-age children by educating parents about vaccinations. Part of this education requires the state to be able to respond to certain objections—including religious objections—by offering its own point of view. Importantly, this process *does not* predicate the receipt of an exemption on a parent's willingness to affirm any religious information that the state offers. Indeed, the Religious Waiver Note opens with the following "General Response:" "I understand your concern between vaccinating your child and following your religious beliefs, but I am also concerned about the risk to your child. Vaccine preventable diseases are still occurring." In short, this document is designed to promote secular goal of children's health and safety by encouraging parents to vaccinate their children.

In the same vein, this document does not have the primary effect of inhibiting religion. While the purpose of the Religious Waiver Note is to provide information that might cause a parent to reconsider getting a vaccination exemption for his or her children, this does not amount to a disparagement of religion. As the Religious Waiver Note itself provides, health department workers must remember that "[t]he key to this conversation is to respect [parents'] religious views while informing them of your concerns about vaccine preventable diseases." Neither the document itself nor its use in the certification process lead to the inhibition of religion. Rather,

the Note provides state workers with information necessary to promote its secular goal of vaccinating as many public school children as it can in an effort to protect the health and safety of those children.

Finally, for the same reasons as discussed within the context of the Certification Rule's educational requirements, the Religious Waiver Note does nothing to foster excessive government entanglement with religion. The Religious Waiver Note is an educational tool provided to state employees that administer the certifications necessary for a vaccination exemption—it does not require those employees to involve themselves with the activities of any religious organizations. Tellingly, it also does not require state actors to determine which beliefs are sincerely held and does not condition receipt of an exemption on such a finding.

For these reasons, Nikolao's complaint that the Certification Rule and the Religious Waiver Note violate the Establishment Clause fails to state a legal claim.

### III. CONCLUSION

We **VACATE** the lower court's judgment with respect to Nikolao's first cause of action under the Free Exercise Clause and **REMAND** the case with instructions directing that the claim be dismissed for lack of subject matter jurisdiction. Because Nikolao has also failed to properly allege a violation of the Establishment Clause, we **AFFIRM** the decision below with respect to her second cause of action. Without any remaining federal questions, the district court properly declined to exercise supplemental jurisdiction over the outstanding state law claims.

---

**CONCURRING IN THE JUDGMENT**

---

KETHLEDGE, Circuit Judge, concurring in the judgment. The problem in this case is that the plaintiff has sued the wrong defendants. Tara Nikolao alleges that two Wayne County nurses improperly interrogated her about her religion and showed her a "Religious Waiver Note" that offended her. But for whatever reason Nikolao never served the nurses, and thus she gives us no reason to opine on the constitutionality of what went on in that room.

That leaves us with Nikolao's claims against the parties she did serve, namely the Wayne County health department; its director, Dr. Mouhanad Hammami; one of its division directors, Carol Austerberry; and Nick Lyon, director of the state's Department of Health and Human Services. As an initial matter, I think that Nikolao has standing to assert her claims because if her claims are valid she has suffered a legal injury. *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 89 (1998). And on the merits I would decide this case on more narrow grounds than the majority does. Specifically, Nikolao cannot obtain damages from any of these defendants because she does not allege that any of them directed or approved of the nurses' conduct, or that such conduct is customary at the Wayne County health department. *See Polk Cty. v. Dodson*, 454 U.S. 312, 325-26 (1981). Moreover, none of these defendants currently publish the Religious Waiver Note, so we have no basis to enjoin any of them from publishing it. *See Mosley v. Hairston*, 920 F.2d 409, 415 (6th Cir. 1990). Nikolao's only remaining claim is that the "Certification Rule"—which requires anyone seeking an exemption for any reason to hear first about the benefits of vaccination—is unconstitutional on its face. And that claim fails because the Rule on its face says nothing about religion.

I therefore respectfully concur in the judgment.